## Robinson and others *against* Williams and another.

6w281
177 405

It is not a valid objection to a title derived from a treasurer's sale of unseated land for taxes, that the land became seated several years before the sale, if it were unseated when the taxes were assessed.

Land in Union county, assessed as unseated land in Northumberland county, while Union was a part of it, may be sold by the treasurer of Northumberland county, after the division of it, for the payment of those taxes.

That land was sold as unseated seven years after it had become seated and taxes paid and received on it as such, for many years; that the land had been set off into another county more than three years, and that the person in possession had been permitted to proceed with his improvements, without claim or molestation by those who held the treasurer's title, are not such circumstances as will render unavailable such title.

The receipt of the treasurer is *prima facie* evidence, that a surplus bond was executed and delivered, and in the absence of other proof on the subject it is conclusive.

ERROR to the common pleas of *Union* county.

This was an action of ejectment for four hundred and twenty-four acres of land, the original title to which, had been in Christian Yantzer, as whose property it was sold in 1816, by the treasurer of Northumberland county, of which Union had been a part, as unseated land for taxes due and unpaid, for the years from 1805 to 1813 inclusive; and it was then purchased by Elisha Geiger; and

[Robinson v. Williams.]

this action was brought by his heirs-at-law, against John Williams and Henry Kister, who were the then owners of the original title, which they had purchased in 1809. The opinion of the court below to the jury, in answer to the points of the plaintiffs' counsel, embodies all the material facts of the case, and exhibits the questions of law which were argued and determined in this court.

Points.

1st. Plaintiffs' counsel requested the court to charge the jury, that if the jury believe there were taxes assessed and due upon the land in question, for the years 1805, 1806, 1807, and 1808, the treasurer of Northumberland county had a right *to sell*, and his deed vested a good title in the plaintiffs.

2d. That the receipt upon the deed for the surplus bond is *prima facie* evidence that it was given to the treasurer, and the evidence of the clerk of the prothonotary, that he could not find it in the office, does not destroy its effect.

3d. That the possession of Kister, one of the defendants, was in accordance with, and not adverse to the title of the plaintiff until 1816; and that the statute of limitation did not begin to run against the plaintiff until that period, when their right of entry accrued; and that plaintiffs are not barred by the statute of limitations.

4th. That if the jury believe a partition of the land in question was made between the defendants, in 1810, and that each after that period held his part as divided in severalty, the possession of Kister does not enure to the benefit of Williams, and will not bar the plaintiffs from recovering that part of the land which is in possession of Williams's heirs.

Opinion of the court below, to the jury.

The plaintiffs have shown a warrant and survey to Christian Yantzer, an assessment of taxes on the land in controversy, as unseated, for the years 1805 to 1813 inclusive, a sale of the land as unseated, and a deed in pursuance of the act of 1815, regulating the sale of unseated land for taxes, from the treasurer of Northumberland county, dated the 25th of July 1816, to Elisha Geiger, under whom, it is admitted the plaintiffs are entitled as heirs. This evidence standing unrebutted constitutes a valid title, on which the plaintiffs are entitled to recover, unless you are satisfied of the facts to be noticed hereafter, as defeating the plaintiffs' title to the moiety held in severalty, by Henry Kister. With this qualification the first point proposed by the plaintiffs' counsel is answered in the affirmative, as as are also all the other points, if the evidence satisfies your minds of the facts assumed or referred to in their propositions. There is nothing, however, absolutely conclusive in the plaintiffs' evidence of the delivery of the bond for the surplus money bid upon the sale. Although the evidence, that such bond is not to be found in the prothonotary's office, is not, of itself, sufficient to rebut the treasurer's receipt; still, if from this and the whole evidence in the

case, you are fully satisfied, that in point of fact no such bond was ever given, the plaintiffs are not entitled to recover.

As to that part of the land held by the heirs of John Williams, it is the opinion of the court, that the payment of taxes from 1810 to the present time, and constantly using the tract as and for wood land, he residing upon another tract, do not change the character of the land to seated, nor do those facts form any bar to the plaintiffs' recovery.

But with respect to that part of the land claimed and occupied by Henry Kister, evidence has been given to show that John and Henry Kister purchased the whole tract from Andrew Albright, on the 6th of May 1809, that they entered into possession of the whole, immediately, or within a few days after the purchase; that they divided the land with Williams, the next year, designating the bounds of their claim by their title and lines upon the ground; that the Kisters obtained, in the partition, that part of the land upon which they had made their improvements and were residing; that they cleared land, planted an orchard, built a house, stable, a saw mill, and an oil mill; that John sold his interest to Henry; that Henry has continued in actual possession, either by himself or his tenant, residing upon the land from 1809 till the present time, paying the taxes on the land, as seated, during the whole period of time, without any claim having been made founded upon the non-payment of the taxes, upon which the sale was made, until the present action was brought, in February 1831. If the jury are satisfied, from the evidence, that these are the facts, the plaintiffs cannot recover that part of the land claimed and occupied by Henry Kister in severalty.

The court fully recognize the principle, that taxes are a charge upon unseated lands, and that the land may be sold for taxes thus assessed while it was unseated, notwithstanding it changes its character and becomes seated before the sale. But under the circumstances of the present case, the sale was not made for six or seven years after the land had become seated and taxes paid and received on it as such, without any notice taken of the taxes upon which the present action is founded; when the land had been set off into another county more than three years, where the defendant, Kister, has been permitted to progress with his improvements without claim or molestation, and pay his taxes on the land, as seated, for more than twenty-one years; if the jury are satisfied of the facts of possession and payment of taxes, already mentioned; the defendant, Kister, is entitled to a verdict for the moiety in his possession.

It is not necessary to trouble the jury with the reasons for this opinion. It may be mentioned, however, as one among the number, that the plaintiffs do not pretend to have shown, and indeed have not shown a compliance with the provisions of the act of 1804, relative to the sale of unseated land for taxes, but they rely

[Robinson v. Williams.]

altogether on the curative provisions of the act of 1815. It is difficult to believe that the legislature intended that act to operate retrospectively, so far as to embrace a case like the present, and to authorize a sale of land which had been seated nearly seven years before the passage of the law, and on which a family was residing, surrounded by extensive and valuable improvements.

Errors assigned.

1. The court erred in stating that there was nothing absolutely conclusive in the plaintiffs' evidence of the delivery of the bond, for the surplus money bid upon the sale.

2. The court erred in stating to the jury, that Henry Kister had continued in actual possession, either by himself, or his tenant residing on the land, from 1809 until the present time, without any claim having been made, founded upon the non-payment of taxes, upon which the sale was made, until the present action was brought in 1831.

3. The court erred in instructing the jury, viz:—" but under the circumstances of the present case, where the sale was not made, until six or seven years after this land had become seated, and taxes paid and received on it as such, without any notice taken of the taxes upon which the present claim is founded, where the land had been set off into another county for more than three years, where the defendant Kister had been permitted, without claim or molestation, to progress with his improvements and pay his taxes on the land as seated, for more than twenty-one years. If the jury are satisfied of the fact of possession and payment of taxes, already mentioned, the defendant Kister is entitled to a verdict for the moiety in his possession.

4. The court erred in their answers to the 1st, 2d, 3d and 4th points of the plaintiffs' counsel, and did not answer them distinctly.

*Donnell*, for plaintiff in error, in support of the first error assigned, cited 2 *Penns. Rep.* 496; 5 *Watts* 287; 1 *Stark.* 454. 2d. The only notice which the law requires of the assessment and non-payment of a tax upon unseated land, is that which is to be found upon the records in the commissioner's office. The treasurer of the county of Northumberland, was the only person who could sell, for it is so directed by the act of the 22d of March 1813, dividing the county. 6 *Smith's Laws* 59. On the 4th point he cited 10 *Serg. & Rawle* 154; 1 *Mass.* 47.

*Merrill*, contra, cited 1 *Yeates* 164; 5 *Peters' Con. Rep.* 247; 3 *Mass.* 342; 4 *Mass.* 155; 4 *Yeates* 456; 10 *Ves., Jun.* 466.

The opinion of the Court was delivered by

SERGEANT, J.—The facts of this case are stated in the charge of the court, and the principal questions of law which have been argued here, upon the errors assigned, are first, whether a treasu-

[Robinson v. Williams.]

rer's sale for taxes of lands unseated at the time of the assessment of the tax, but seated before the sale, is valid. Second, whether the authority to sell was duly exercised by the treasurer of Northumberland county, the lands lying in Union county. Third, whether the possession by the defendants' improvements made, and other special circumstances of the case give them a right.

1. Various laws for the collection of taxes on unseated lands have been from time to time passed, but the existing line of demarcation between seated and unseated lands, in relation to the legal remedy for the recovery of county and road taxes, was drawn by the act of the 11th of April 1799, and its supplements, regulating the collection of taxes on seated lands, and the act of the 3d of April 1804, and its supplements, providing for the recovery of taxes on unseated lands. The remedy for the former, was rendered altogether of a personal character, by distress and sale of the goods of the person charged, or by process against his person. No lien was created on the land, nor any recourse given against it. On the other hand, where the land was unseated, the assessment of the tax was made a charge on the land, and not on the person, and the only process to enforce its recovery, was by a sale of the land itself. In the case before us, the land was unseated when the taxes of 1805, 1806, 1807 and 1808, were assessed. It became seated in 1809, and was sold in 1816, for these and other taxes accruing subsequently. It is undoubtedly a hard case, that the sale should be procrastinated for several years, and that after valuable improvements have been made on the land by the owner, it should be set up as unseated land, and sold for a trifling sum. But still, I have in vain sought any thing in the act of assembly, which would warrant us in saying that a sale in such case is null and void. No intention is evinced in the acts to remit taxes which had been duly assessed, and left unpaid, because at a subsequent period the land became seated, and the seating it affords no new remedy for the taxes thus due. Taxes on unseated lands are not put into the duplicate of the collector; it contains only the assessments on the land while seated; nor is the owner, or any other, personally liable. If, therefore, the land could not be sold, there would exist no remedy whatever, and the taxes would be lost. It was, perhaps, deemed unjust to the county and the public, that after several years of arrears of taxes they should be irrecoverable, because before the sale, the land, or a part of it was occupied or cultivated by the owner or some other person, and thereby became seated. At any rate, the words of the act of assembly are too strong to be got over; for it enacts, that the treasurers of the several counties shall be, and they are hereby authorized and directed to commence on the second Monday in June 1816, &c., and make public sale of the whole, or any part of such tracts of unseated lands, &c., as will pay the arrearages of the taxes *any part of which shall then have remained due and un-*

*paid for the space of one year before,* together with costs, &c. Act of 13th of March 1815, sect. 1.

2. We are of opinion, that the treasurer of Northumberland county was empowered to make sale under the act of 1815, for the taxes due and unpaid on land situate in the county of Union, assessed whilst it formed part of the county of Northumberland. The act of the 22d March 1813, 6 *Smith's Laws* 59, provides, sect. 5, that all taxes and arrears of taxes, laid, or which have become due within the said county of Union, before the passing of the act, should be collected and recovered as if that act had not been passed. The effect of this provision is to leave to the county of Northumberland, in respect to these taxes, the exercise of the same authority, as if the lands lay in Northumberland county.

3. The court below were of opinion, that there were circumstances in the present case, which entitled the defendant, Kister, to a verdict, namely: that the sale was not made for six or seven years after the land had become seated, and taxes paid and received on it as such, without any notice taken of the taxes on which the present action is founded—that the land had been set off into another county more than three years—that the defendant, Kister, had been permitted to progress with his improvements, without claim or molestation, and pay his taxes on the land as seated for more than twenty-one years.

But we are of opinion, that none of these circumstances are sufficient to devest the title of the present plaintiffs. The distance of time at which the sale was made after the land was seated, and the receipt of taxes on it as seated, without notice of the arrears due, are immaterial, if the sale was authorized by law. The assessment of those arrears on the public books, and records of the county, was notice to the owner and all concerned, and it was their duty to ' inquire into and discharge them. The county officers are not required by law to give any other notice of the assessment to the debtor: and the receipt by the collector of the taxes assessed on the land after it became seated, cannot be considered as a waiver of prior taxes assessed and outstanding, whilst it was unseated. Nor is the circumstance of the land being set off into another county an objection; because we have seen, that by the act of 1813, it remained liable in the same manner, as if the county of Northumberland had never been divided.

 As to the defendant, Kister's possession, it appears, that it subsisted from 1809 to 1813, a little upwards of twenty-one years: but ' this possession cannot be deemed adverse and exclusive, so as to bring it within the act of limitations, except from the time of the plaintiffs' purchase, which was not till 1816, which would make up an adverse possession of little better than fifteen years. Prior to the plaintiffs' purchase the county had a *lien* upon the land, for the taxes which had been assessed, accompanied with a power to sell. In this respect, it is analogous to a judgment, which consti-

[Robinson v. Williams.]

tutes a lien, with a right to sell the land by execution. From the time that a sale takes place, a title or claim accrues, to which the possession of the former owner becomes hostile and adverse, but not before. Here the time which elapsed after such title accrued to the plaintiff by the sale for taxes, being short of twenty-one years is not sufficient, and the prior period of possession cannot be taken into the account. As to the improvements, (though it would seem, the mills have been for some time past, removed by the defendant, Kister, to another tract) the mere silence or inaction of the plaintiffs does not take away their right. The defendant had the means of ascertaining the title, and was bound to search the county records for outstanding taxes. However hard the decision may appear to be, under the peculiar circumstances of this case, I perceive no legal ground on which relief can be given to the defendant, and it is our duty to administer the law as we find it, leaving it to the legislature to remedy the inconveniences which may appear in some instances to arise from the existing system. We are of opinion, that the court below erred on this point, and the circumstances relied on, do not prevent the plaintiffs from recovering.

It remains to notice the first error assigned, in the statement by the court, that there was nothing absolutely conclusive in the plaintiffs' evidence of the delivery of the bond for the surplus money bid on the sale. It has been held in White *v.* Willard, 1 *Watts* 42, and Fager *v.* Campbell, 5 *Watts* 288, that the receipt of the treasurer is competent evidence, that a surplus bond was executed and delivered, which is enough for the title of the purchaser, who is not responsible for the neglect of the treasurer in omitting to have it filed. It thus becomes *prima facie* evidence, and in the absence of any rebutting proof, must, like all *prima facie* evidence, be deemed conclusive. Here I perceive no evidence to rebut it, or to render the fact doubtful, and it is error to leave it to the jury to find a matter of which there is no evidence. The court ought to have instructed the jury, that in the absence of any proof to the contrary, the treasurer's receipt should be deemed conclusive proof that the bond had been filed.

Judgment reversed, and a *venire facias de novo* awarded.