## Bigler *against* Karns.

A plaintiff in ejectment, who claims under a sale by the treasurer, made in pursuance of the Act of 1804, must show the original title to be out of the commonwealth: the lapse of five years, and the limitation contained in the third section of that Act, does not so perfect his title as to enable him to recover against one in the actual possession of the land.

ERROR to the District Court of *Mercer* county.

William Karns against Jacob Bigler. This cause was so imperfectly exhibited as to be almost unintelligible: but it appeared to be an action of ejectment for 100 acres of land, part of lot No. 681, of 200 acres, in the fourth Donation District.

The plaintiff called Samuel White, who testified that "he went on the land in 1827 by virtue of a transfer from William Karns of a treasurer's title, and a deed from Karns to him for 100 acres of lot No. 681 in the fourth district." The plaintiff then offered in evidence a treasurer's deed dated the 11th of June 1811, to Robert M'Dowell, for lot No. 681, sold for the taxes of 1809; and a transfer of that deed to William Karns, dated the 18th of September 1813; together with the surplus bond. The defendant objected to this evidence because the title was not shown to be out of the commonwealth, and because the witness spoke of having possession of a part of lot No. 681, and which was not in dispute. The court overruled the objection and sealed a bill of exception.

The defendant then offered in evidence a deed from the collector of the United States, made in pursuance of a sale for direct tax to John Bigler for the north half of lot No. 681, dated the 12th of June 1821; and to prove that John Bigler went into possession under that deed of the land in dispute in 1822, and made large improvements; and that he and the defendant, who was his son and heir-at-law, had been in possession ever since. The plaintiff objected.

The court below said: "It is admitted that the requirements are not at hand to make out the regularity of the direct tax sale. The deed being void, cannot be received for any purpose: nor do we think that a person in under such a deed or an intruder could prevent the statute from running in favour of the holder of the treasurer's title: and we also think that the entry under the treasurer's title by the sale of the 100 acres enured to give the statute effect to the extent of the whole tract.

*Stevenson* and *M'Candless,* for plaintiff in error.
*Pearson,* for defendant in error.

iv. — 18              M*

The opinion of the Court was delivered by

Huston, J.—After a variety of legislation on the subject of assessing taxes on wild and uncultivated land, and selling such lands for the unpaid taxes, none of which, so far as we know, ever was held to make a good title to the purchaser, the legislature, on the 3d of April 1804, passed an Act directing the mode of selling unseated lands for taxes.  It may be sufficient to say, that so many requisites were prescribed by that Act, of most of which no record was directed or made, that no purchaser of lands sold under that law could ever make out a title, as plaintiff or as defendant, if the former owner brought suit—except he was protected by the limitation in the 3d section of that Act in these words: " No action for the recovery of said lands shall lie, unless the same be brought within five years after the sale thereof for taxes as aforesaid."  It was not for many years after that any court was called on to decide the effect of these words.  In *Parish* v. *Stevens*, (3 *Serg. & Rawle* 298), the Supreme Court decided the limitation to be positive according to the letter of the law.  Several years after, in *Waln* v. *Shearman*, (8 *Serg. & Rawle* 357), the matter was reconsidered, and the decision was that the five years limited by the above law commenced from the time the purchaser took possession, and not from the date of the sale.  The opinions of the judges who decided the cause are long and elaborate, and, as they are in the hands of the profession generally, I shall not repeat them.  Two years after, the legislature had before them a bill supplying some things as to commissioners' sales for taxes; and after referring to the above decision, but not in words indicating any disapprobation, they enacted: " Section 3. Where lands have been sold for taxes, under the provisions of the Act of 3d of April 1804, any person or persons now having right of entry because no actual possession has been taken of the land so sold, and the heir or heirs of such persons, may, within two years from this date, commence his action or suit, as he, she or they, or his, her or their ancestors or predecessors might have done."  " Sect. 4.  Any person wishing to bring an ejectment for land on which no person resides, and which lands have been sold for taxes, may bring his action and serve the writ on the person who purchased the said lands; and if such person cannot be found in the proper county, then the court, after the return day of the writ, may, on motion of the plaintiff or his attorney, grant a rule on the defendant, describing the premises, to appear and plead, which rule shall be published for 60 days successively before the return day thereof, in a weekly or daily paper of the proper county; and if no person appears, then the court, on proof of the publication, shall, on motion in open court, at the stated term, give judgment by default.  But when the purchaser appears, or some person claiming under him, the court shall cause the person, or his legal representative, so claiming under the purchaser, to be

[Bigler v. Karns.]

made defendant, and the case shall be proceeded in and tried on the respective titles of the parties, as fully as if there was an actual occupation of the land." This law was passed 29th of March 1824, and it may seem, and is strange, that no case under it has, so far as I can learn, occurred in any court; certainly none has been in this court. Probably most of the purchasers under the Act of 1804, whose titles had been uniformly found invalid, unless saved by five years' possession, have neglected to pay the taxes, and the lands have been since sold under the Act of 1815.

The Act above cited was very carelessly penned. The plain and literal meaning of the 3d section is, to give the owner two years longer within which to bring his suit, just as the Act of 1800, when the time limited in the general limitation law was about expiring, extended it for three years. There is no colour of censure cast on the decision of the Supreme Court, nor any declaration that if suit is not brought within two years the right shall be barred. It is only by conjecture that we can ascertain whether it relates to suits by the former owner, or by any person who may have a title adverse to the one sold for taxes, or that it is intended solely for suits between the former owner and him who purchased at the sale for taxes.

In the 4th section we discover, by the first part of it, that it relates to lands sold for taxes, and a suit against the purchaser of said lands; but this suit, by the words of it, may be either brought by the owner before the sale, or one having an adverse title. There is nothing which savours of any limitation of time in it more than in any other section in the volume. But if we take it to relate solely to the case of the owner before and the purchaser at commissioners' sale, there is no limitation or prohibitory clause; and an Act of Limitation in all other cases contains an express declaration, and does not leave the prohibition to conjecture. Another thing most apparent is, it refers only to suits *against the purchaser* for taxes, and not to suits *brought by him.*

We have a very brief paper-book. It looks as if it had been supposed this Act produced some magical effect, and it was not to be inquired into what that effect was; and it was not observed that this is not a suit between the former owner and the purchaser. The man who has a treasurer's deed, has as against a third person no better title than the owner had before the sale. The defendant had shown no title. Now if the soldier who drew lot No. 681, in district No. 4, had brought the suit, he must have shown there was in district No. 4 a tract of 200 acres drawn by him, and without this the defendant might fold his arms; being in possession, he will stay there until some plaintiff shows some right to that tract. If the plaintiff had a deed from somebody professing to be the soldier who drew that tract, he could not read his deed until he showed that such a tract was drawn by a soldier at least of the same name with his grantor. But it was said a treasurer's

[Bigler v. Karns.]

deed puts the purchaser in possession; certainly not more than a warrant, survey and return does: but the owner of a warrant, survey and return sells it, or the sheriff sells it; the purchaser must begin by showing the warrant and return of survey, and then a transfer to himself. But the plaintiff had a witness who showed a deed from the plaintiff to the witness for 100 acres, part of the tract in dispute; that was no evidence against the defendant, Bigler, that the plaintiff had any colour of right either to what he had sold or to what he claimed.

But the plaintiff had a treasurer's deed, and had sold 100 acres of the land described in it to a person, who in 1827 went into possession of the part he had purchased; but that purchaser took possession of his own part and for himself, and not for Karns. Even against the former owner this possession might protect White, who was in possession, claiming 100 acres under this deed; but this gave no possession to Karns of the residue of the tract. Besides, Bigler, the defendant has been in the actual possession of the rest of the tract, claiming it as his own, for five years before 1827, when White bought from Karns. The judge rejected Bigler's deed, because he could not show the proceedings under the sale for direct tax to be regular. Now it gave him legal or constructive possession as much as the treasurer's deed gave to Karns. If Karns had shown, which he did not, that he had entered and took and continued possession five years, it might have presented a different case. But Karns never had actual possession of one foot of what Bigler holds. If White had been the lessee of Karns, or tenant in common, there might be some colour of his possession being of some use to Karns. His entry and his possession had no more connexion in fact or in law with Karns's possession of Bigler's part than with that of the man whose land lay on the other side of him.

I had thought of going more fully into the construction and effect of this law, but as the cause goes back, I shall only suggest that it is worth considering whether the Act with which I began (29th of March 1824,) is not, in the most favourable construction, intended as a shield to the purchaser against the former owner, and not a sword to wound him or any other claimant. There is another matter. It is said by Chief Justice Tilghman in *Royer v. Benlow*, (10 *Serg. & Rawle* 305), he who suffers another to reside and pay the taxes on land more than 21 years, may be considered as having abandoned it: so if he suffers another to pay the taxes on a designated part 21 years, he may be considered ousted of that part; and this has been sanctioned in many cases since from *Read* v. *Goodyear*, (17 *Serg. & Rawle* 350), on to *Kelsey* v. *Murray*, (9 *Watts* 113).

I repeat, this has the appearance of a case little argued, and what is very unusual with that court, little considered. Another matter is worth notice: all those acts relating to unseated lands

[Bigler v. Karns.]

brought to the attention of the legislature property of which there was no actual occupant. Cannot we suppose it was the intention of the legislature that any person actually possessing and enjoying a house and lands should be compelled to bring an ejectment to put his own title and possession in suit? The 11th section of the Act of 3d April 1792 does this in case of a *caveat,* but it is so anomalous a case in our law and in all laws, that it is doubtful whether any court can consider it to be the law of the land except where it is expressly and distinctly so by positive enactment. The last matters in this opinion are thrown out not as decided by the court, or the judge who wrote this opinion. In the points made and decided in the court below there is error.

Judgment reversed, and *venire de novo* awarded.