# M'Call *against* Himebaugh.

The location of the 10th donation district, so far as the same fell within the Triangle, although prior to the acquisition of the territory by the State of Pennsylvania, was not void; but the subsequent purchase of it by the State confirmed the location and titles under it, for all the purposes of assessment and sale of the lands as unseated for the payment of taxes.

The Act of 1815, on the subject of the sale of unseated lands for the payment of taxes, is not a repeal of the Act of 1804, but only of so much of it as is altered or supplied: the limitation, therefore, of five years, contained in the third section of the Act of 1804, is in full force.

ERROR to the District Court of *Erie* county.

This was an action of ejectment by Sarah M'Call and others against Peter Himebaugh, William B. Weed, Elymas Vancurin and Frederick Shade, and was in its facts and circumstances so like the preceding case, as to require no further statement than that contained in the opinion of the court. It was also argued by

*Riddle* and *Sill*, for plaintiffs in error.
*Babbit* and *Walker*, for defendants in error.

The opinion of the Court was delivered by

HUSTON, J.—The plaintiffs claimed as in the preceding case of *M'Call* v. *Coover*, on a warrant to Gunning Bedford, dated 13th of April 1794, surveyed in 1794, 400 acres, and patented 30th July 1799, and this title deduced to the plaintiffs. The defendants showed a conveyance from the Population Company, through whom the plaintiffs claimed, to Peter Himebaugh for 100 acres, part of the tract described in plaintiff's writ. This did not adjoin the part really in dispute. The jury found for defendant Peter Himebaugh for this, and to this there is no objection from any quarter. The defendants showed a donation tract No. 190, drawn by and patented to Alexander Simonton. It was shown and admitted that this tract lay within the Triangle, (purchased as recited in the last case), and was surveyed and returned, and drawn and patented, before the land covered by it was purchased from the

[M'Call v. Himebaugh.]

Indians, and ceded to Pennsylvania by the United States.    The defendants claimed under a sale for taxes.

There were a series of objections to the papers next offered which ought never to have been made.    The bills of exceptions taken were never mentioned here.    The court-house and offices, including the commissioners' office, together with all papers in them, were burned in 1823.    It is time to cease calling witnesses to prove so notorious a fact, especially as there is an Act of Assembly stating it, and providing for a new one, and for testimony to supply the lost records.    The commissioners' deed recited a sale for unpaid taxes from 1806 to 1819 inclusive, amounting to $43.58, and costs $3.87, due on donation tract 190, in the name of Alexander Simonton, sold to John H. Kerr, on 12th of June 1820, for $47.50.    The defendants, (except Himebaugh as to his 100 acres bought from plaintiff), were admitted in the argument here and by the charge of the court, to claim under John H. Kerr in this way—the records of assessments, &c. were burned in 1823, but for the years 1824 and 1825 it was assessed still as No. 190, in the name of Alexander Simonton, and in 1826 and 1827 in the name of John H. Kerr; and it was sold in 1828 to Peter Himebaugh for $187 taxes and costs, $29.80 paid, and a bond given for the balance.    They then gave in evidence a deed from Peter Himebaugh, dated 11th of April 1831, to William B. Weed, for part of the tract No. 190, also a deed from Peter Himebaugh to Joseph Patterson, 16th of April 1831, and a deed from Patterson to Elymas Vancurin for another part 29th of January 1833; and that Weed and Vancurin took possession immediately under their deeds, and made valuable improvements.

There was then much testimony about a deed from Patterson to Honaker for the residue of the tract No. 190.    There was proof of the drawing and execution of the deed, and that Honaker took possession and lived on it three or four years, and made a deed to Shade in 1836, which was offered in evidence, and that Shade lived on it ever since 1836; but as the court thought there had not been enough of search made of Patterson and Honaker, who had moved out of the State, and Shade was not present to prove that he had not and never had the deed from Patterson to Honaker, the court said all this parol proof did not deduce the title.    This was not error, though perhaps it is immaterial whether defendants are Patterson's tenants, or alienees, so far as respects the rights of plaintiffs.

The plaintiffs then showed they had paid taxes for their tract, which included a large portion of No. 190, for the years 1806 to 1827 inclusive, except the years 1807, 1808, and 1812; now these are three of the years for the unpaid taxes of which it was sold in 1820; and it has been held that if the taxes of any year are unpaid, the sale will be good though the tract has been settled and paid taxes as such for six or seven years.    *Robinson* v. *Williams,* (6 *Watts* 281), a

case which I never think of without wishing for some legislative provision against bringing up old neglected taxes against an innocent purchaser.

The defendants proposed certain points of law applicable to the case.  1. That the tract in question having been drawn and perhaps patented to Alexander Simonton, and so appearing on the general draft of donation district No. 10, is such a right in him as made it the subject of taxation.  2. That being a subject of taxation, it might be sold.  3. That the sale in 1820 to Kerr, being among other years for 1807, 1808, and 1812, when plaintiff had paid no taxes for those years, vested the title to No. 190 in Kerr, and not giving a bond for four or five cents overplus after paying taxes and costs, did not avoid the sale.  4. That if the jury believe the defendants or any of them have been in actual possession, continued more than five years under a title from a sale for taxes, the plaintiffs cannot recover against any of them so in continued possession more than five years before commencement of this suit.  5. That if the plaintiffs recover, the defendants are liable to pay for their improvements.

The court having repeated the charge given in the last case, which gave a history of the proceedings respecting the donation tracts and the purchase and title to the Triangle, which is in substance the same as far as it goes with that given by me in the preceding case, proceeded to answer the points proposed by defendants, and answered the three first in the negative.  The court had in the hurry of the trial assumed first, that the Acts of Assembly forbidding individuals to purchase from the Indians or settle on Indian land, applied to the State.  It never did in letter or spirit apply to the late proprietary or to the State; if it had prevented the State from purchasing, the lands must have continued the property of the Indians to this day.  And in connection with this it was said all surveys made under a direct law of the State were absolutely void, and that the titles on patents where the consideration of service and toil and blood had been fully paid, were so void, that the subsequently acquired title did not enure to the use of the person deriving the title under patent from the State. It was overlooked that the State could have taken and sold these lands without purchasing them from the Indians, and in fact did appropriate the lands in the whole 10 districts for donation a year before they were purchased from the Indians.

The next error was in supposing that the law making provision for those soldiers whose lots fell in New York, applied with equal force to those which were not in New York, but in the Triangle. The words do not include them, and a full examination of all the Acts of Assembly has shown there was no intention to put them in the same situation.  It must be remembered it was not the land surveyed and patented to soldiers and officers which was excepted from appropriation by common warrant and survey or common

[M'Call v. Himebaugh.]

settlement; but it was a whole tract of country minutely described which was set apart for the *only and sole use* of fulfilling and carrying into execution the said resolve, to give lands to officers and soldiers who had served during the war of the revolution. There was error then in the answer of the court to each and all these three points.

The fourth point as to whether the limitation of five years in the fourth section of the Act of 4th of April 1804 extends to and protects those who purchased at treasurer's sale after the law of 1815, is one of general and great importance, and which has often been mooted in this court. The Act of 13th of March 1815 is an Act to amend the Act directing the mode of selling unseated lands for taxes; and it repeals so much of the original Act of the 3d of April 1804 " as is hereby altered or supplied." It was argued here as if the Act of 1815 had introduced a new system of taxing and selling unseated lands, whereas it only changes the mode of advertising, fixes the day when sales shall be had once in two years, dispenses with proof of the regularity of the assessment and advertisement, and gives the owner two years within which to redeem: and if taxes had not been paid or the land seated, the title is declared valid in very strong language. It has been doubted whether it was not the intention of the legislature to substitute this limitation of two years for that of five years in the Act of 1804, but this court has decided otherwise on satisfactory grounds. If this is not a substitute for the five years, and the limitation of five years is repealed, there is no limitation under twenty-one years' actual possession which settles these titles; no man can read the Acts and believe this.

We must go to the Act of 1804 for the mode of assessing and taxing unseated lands; in that Act alone we find the provision that the purchaser shall give bond for the overplus of his bid over the taxes and costs, the filing that bond in the office of the pro-thonotary, and making it a lien for the benefit of the former owner for five years; and the direction that sales may be good though not sold in the name of the person who at the time of assessment and sale was the real owner; these are all in force. Without the Act of 1804, commissioners could not stir in the business of unseated lands.

In the third section we find the provision that " no action for the recovery of said lands shall lie unless the same be brought within five years after the date of the sale thereof for taxes as aforesaid:" with a proviso in favour of minors, &c. The first decision on this clause gave it full effect whether the purchaser took possession or not, (3 *Serg. & Rawle* 298); but on the principle that a statute did not run until an adverse possession, nor until a suit could be brought, it was held to be confined to five years after the purchaser took possession. After the Act of 1815, it was contended the limitation of two years was substituted; this was de-

[M'Call v. Himebaugh.]

cided not to be so, and that the limitation of five years above cited was still in force. *Waln* v. *Shearman,* (8 *Serg. & Rawle* 357). So the matter rested until within a year or two, and it was again stirred. It was argued in two cases at Sunbury in July last, and an opinion of the whole court delivered by Justice Kennedy. (3 *Watts & Serg.* 510). The matter then is settled in favour of the defendants as much as anything can be settled in a country where everybody claims the right to contest everything.

The verdict and judgment in this case, (except as to the 100 acres conveyed by plaintiffs to Peter Himebaugh), is reversed, and a *venire de novo* awarded.