## Rogers *versus* Johnson and Wife.

1. The failure to give a surplus bond on the purchase of unseated land, and paying the whole purchase-money to the treasurer, are *irregularities* cured by the limitation in the Act of April 3d 1804.

2. Within five years after a sale for taxes without filing a surplus bond the owner may recover without redemption.

3. The limitation in the Act of 1804 does not apply when an owner is in possession.

4. Except where the owner is in possession, the limitation of the Act of 1804 runs from the delivery of the deed and not from the time when the purchaser takes possession.

5. Various cases on the Act of 1804, considered, compared, and discussed.

6. Ash *v.* Ashton, 3 W. & S. 510, recognised and approved.

67　　43
27 SC　389
67　　43
33 SC　410

November 15th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Fayette county*: No. 14, to October and November Term 1869.

This was an action of ejectment brought April 14th 1866, by Worthington R. Johnson and Anna, his wife, for the undivided moiety of two tracts of land situate in Connellsville township, containing respectively 406 and 428 acres. The title to the tracts, October 19th 1811, was in Thomas Johnson, from whom an undivided half of them was vested in the plaintiff. The land was unseated and so assessed and taxed in 1831 and 1832 in the name of Thomas Johnson. The taxes being unpaid, both tracts of the land were sold to the defendant in June 1834 by the treasurer, under a warrant from the county commissioners; the purchase-money amounted to more than the taxes and costs; the defendant gave no surplus bond, but paid the whole purchase-money to the treasurer, who receipted for it on the deeds, which were dated June 10th 1834, and acknowledged in open court September 12th 1834. The tracts were wild mountain woodland. The defendant occupied them for pasturing cattle; he also cut and sold timber on them from about the time of his purchase.

[Rogers *v.* Johnson.]

They had been assessed in his name, and he had paid the taxes since 1838.

The defendant requested the court to charge the jury:

1. That this action of ejectment not having been brought until more than thirty years after the treasurer's sale, the plaintiffs are not entitled to recover.

2. That although no bond was given or filed at the time of the treasurer's sale, for the surplus over and above the amount required' for the payment of the taxes and costs, the defendant is protected by the Statute of Limitations relative to tax sales; his deed is good, and the plaintiffs cannot recover.

The court (Gilmore, P. J.) charged: " The plaintiffs have shown a good legal title for the lands demanded in their writ. The defendant claims title under treasurer's deeds, for both the tracts sold by the treasurer of the county for taxes assessed upon the property as unseated, and requests us to instruct you on two points presented, that the defendant is entitled to your verdict. We refuse the instruction prayed for in these points, and charge you that there having been a surplus on the sale of both these tracts after payment of taxes and costs, it was the duty of the purchaser to make and execute bonds to the treasurer for the surplus; not having done so his title under these sales is void, and the Statute of Limitations of the Act of 1804 cannot create a title or avail him anything. We therefore instruct you to render a verdict for the plaintiffs."

The verdict was for the plaintiffs. The defendant took out a writ of error, and assigned the charge for error.

*D. Kaine*, for plaintiff in error.—By the Act of March 18th 1815, § 4, 6 Smith's L. 301, Purd. 995, pl. 35, irregularities will not vitiate a tax sale. An action for the recovery of land sold for taxes must be brought within five years from the sale: Act of April 3d 1804, § 3, 4 Smith's L. 200, Purd. 995, pl. 36. These acts are *in pari materia*: Ash *v.* Ashton, 3 W. & S. 510. The provisions of the Acts of 1804 and 1815 apply to the want of a surplus bond: Iddings *v.* Cairns, 2 Grant 88; Bigler *v.* Karns, 4 W. & S. 139; Ash *v.* Ashton, *supra*, is recognised as correct in McCall *v.* Himebaugh, 4 W. & S. 164; Bayard *v.* Inglis, 5 Id. 465; Hubley *v.* Keyser, 2 Penna. R. 496. Actual possession by the purchaser is not necessary for the protection of the Act of 1804, and since the Act of March 29th 1824, § 4, 8 Smith's L. 291, Purd. 996, pl. 39, no possession at all is necessary: Robb *v.* Bowen, 9 Barr 71; Waln *v.* Shearman, 8 S. & R. 357; Parish *v.* Stevens, 3 Id. 298; Bradford *v.* Dornseif, 2 Penna. R. 503; Sheik *v.* McElroy, 8 Harris 31; Donnel *v.* Bellas, 10 Barr 341; s. c. 1 Jones 341, 10 Casey 157.

[Rogers v. Johnson.]

*C. E. Boyle,* for defendant in error.—The want of a surplus bond was fatal : Sutton *v.* Nelson, 10 S. & R. 239 ; Connelly *v.* Nedrow, 6 Watts 452 ; Bartholomew *v.* Leech, 7 Id. 474 ; White *v.* Willard, 1 Id. 42 ; Fager *v.* Campbell, 5 Id. 287 ; McDonald *v.* Maus, 8 Id. 364 ; Ash *v.* Ashton, *supra;* Cuttle *v.* Brockway, 12 Harris 147 ; Alexander *v.* Bush, 10 Wright 62 ; Lackawanna Iron Co. *v.* Fales, 5 P. F. Smith 96 ; Turk *v.* McCoy, 14 S. & R. 352 ; Frick *v.* Sterrett, 4 W. & S. 269 ; Driesbach *v.* Berger, 6 Id. 565 ; Trego *v.* Huzzard, 7 Harris 441 ; s. c. 11 Casey 11. The limitation of the Act of 1804 does not run in favor of a void sale : Parish *v.* Stevens, 3 S. & R. 298 ; Cranmer *v.* Hall, 4 W. & S. 37 ; Donnel *v.* Bellas, 10 Barr 341 ; Stewart *v.* Trevor, 6 P. F. Smith 374 ; Gibson *v.* Robbins, 9 Watts 159 ; Turner *v.* Waterson, 4 W. & S. 174 ; Burns *v.* Lyon, 4 Watts 367 ; Robinson *v.* Williams, 6 Id. 287.

The opinion of the court was delivered, May 25th 1871, by

AGNEW, J.—This ejectment was brought in 1866 by Johnson and wife against Daniel Rogers, who claimed the lands in controversy by treasurer's sales for taxes made in 1834. The land was wild mountain land, and Rogers took possession by pasturing his cattle upon it and by taking off timber from time to time, and paid the taxes from 1838 inclusive until the time of the trial. The plaintiff admitted his possession by bringing the ejectment. The jurisdiction of the treasurer to sell was undoubted. The land was unseated, the taxes regularly assessed, and were due and unpaid more than a year, the sales were regularly made and the deed executed, acknowledged and delivered ; and the only irregularity complained of is, that Rogers paid to the treasurer, who receipted for the same, the whole of his bids, instead of giving bonds for the surplus over the taxes and costs. Is that irregularity cured by the limitation of five years contained in the 3d section of the Act of 3d April 1804 ? This is the only question. The case of Ash *v.* Ashton, 3 W. & S. 510, expressly decides the point in favor of· the purchaser at the tax sale. That case was determined in 1842, and has never since been doubted or overruled. Its ʳauthority is now questioned, and it is said the only reason given was the unsound one that the bond was not recoverable after five years. This is neither a correct nor a candid statement of the reasons given by Justice Kennedy, who delivered the opinion. His language was, that it " could only be made *available,* according to· the express terms of the act, by causing an action to be entered on the docket of the prothonotary, in whose office it ought to have been filed within five years after the sale of the land." How available ? Clearly he meant as a lien against the land, and not as a personal obligation. In regard to the owner's remedy against the land, it makes no difference whether his title is gone

by the limitation of five years, or by the loss of the lien of the bond. He then proceeds to say : " It is not easy to discover any good reason why they (the owners) should be allowed a longer time to proceed to recover the one more than the other; for as regards the owners at the time of sale, the loss is the same to them ; but as regards the interests of the state,- the application of the limitation of five years in order to bar the recovery of the land by the owners, may be very important. As regards the peace and quiet of the community, it would seem to be expedient that it should be applied ; and as regards the wealth of the state, it would be not less so, because a protection to those in possession of the land by the application of such a limitation would be a great inducement with them to improve and render it much more productive and valuable than otherwise they would be likely to do." The case of Ash *v.* Ashton has been since frequently cited and recognised without the expression of a doubt of its authority. It was heard at Sunbury in July 1842, and in the following September Justice Huston, in the case of McCall *v.* Himebaugh, 4 W. & S. 164, referring to Ash *v.* Ashton, says, " the opinion of the *whole court* was delivered by Justice Kennedy." Bayard *v.* Inglis, 5 W. & S. 465, decided in the next year, was a case where the sale was made on the 16th of June 1824, deed duly acknowledged, dated 23d August 1824, and no bond was given until May 25th 1826, and it was then never filed. There Justice Rogers cited Ash *v.* Ashton, and held that the title was made valid by the limitation in the Act of 1804. Burd *v.* Patterson, 10 Harris 219, decided in 1853, was a similar case. Lewis, J., delivered the opinion, holding the bar of the Act of 1804 to be effectual. " It is objected," he says, " to the sale, that no surplus bond was given ; but it appears that one was given on the 7th of February 1833, which was before the expiration of the two years. But under the view taken in Ash *v.* Ashton, 3 W. & S. 516, this irregularity, as well as all others, is cured by the Statute of Limitations." If Ash *v.* Ashton be not good law, it is remarkable that it should be so often, and so soon, brought into the direct view of our predecessors and recognised as authority without a note of dissent. This is not all. At the very term when Burd *v.* Patterson, *supra*, was decided, the point arose directly in Iddings *v.* Cairns, 2 Grant 88, and was distinctly decided. The report in Grant's Cases is meagre ; but the paper-books have been examined, and the question arose in two forms, first by objection to the competency of the deed " because no surplus bond had been first shown to have been given ;" and next upon the answer of the court to a point expressly requiring the court to charge that the deed " conferred no title because there is no evidence of the execution and delivery of a surplus bond to the treasurer." In this court, Black, C. J., said : " In a contest

[Rogers v. Johnson.]

between a purchaser at treasurer's sale and the original owner, or between those claiming under them, the limitation in the Act of 1804 gives the purchaser a good title after five years, although it may be shown that he bought at a price greater than the amount of the taxes and costs and filed no bond for the surplus." Here, then, is a decision on the very point; and if there is any virtue in the maxim *stare decisis*, in the stability of the rules of property, or any faith to be given to titles, the law should be regarded as settled, especially in view of the thousands of tax sales, on the faith of which titles are held.

Much of the argument was rested on the treasurer's sale being *void*, when no bond has been given for a surplus. This, however, is a mere play upon the word void—a term merely expressive, in such a case as this, of a *fatal* irregularity in the sale, and not of a want of authority to make the sale. The 4th section of the Act of 1815 had declared that the owner should recover only on two grounds, viz., a previous payment of the tax, or an offer to redeem within two years. But the court, considering it unjust that the purchaser should hold the land without securing the payment of his bid, held that his omission to give a bond for the surplus was fatal to his title. This, however, is obviously only an irregularity, but because it is fatal, the sale has been termed void. But when the land is unseated, the tax duly assessed and unpaid, a sale regularly made and deed delivered, and the purchaser has in good faith paid his bid to the treasurer, the case bears no resemblance to a sale void from a want of authority or jurisdiction. In such a case there is no reason whatever that the purchaser should not be protected by the limitation in the Act of 1804. Within the five years the owner has his remedy, and may recover his land without redemption; and if he fails to bring his suit in time, he is no worse off as to the title than if there had been a surplus-bond, and he had failed to pursue it against the land within the five years during which it remains a lien.

The distinction between a sale absolutely void from a want of jurisdiction to sell, and one merely void because of a fatal defect in the proceeding is palpable. Thus, in McKee v. Lamberton, 2 W. & S. 114, and Cranmer v. Hall, 4 Id. 36, where the land was seated and the treasurer had no authority to sell, it was held that the purchaser was not entitled to be compensated for his improvements; while in Coney v. Owen, 6 Watts 435, and Gilmore v. Thompson, 3 Id. 106, where the lands were unseated and the treasurer had general jurisdiction, but the sales were void because in the first case of exemption from taxation, and in the second because of a prior payment of the taxes, the purchaser was held to be entitled to his improvements. There are other cases, even when the irregularity has deprived the owner of his surplus bond, where the sales have been sustained. Thus the sales were sup-

[Rogers *v.* Johnson.]

ported·in Gibson *v.* Robbins, 9 Watts 156, where the treasurer charged too much costs, and appropriated the whole bid where a surplus would have existed for which a bond should have been taken; and in Peters *v.* Heasley, 10 Watts 208, and Russell *v.* Reed, 3 Casey 166, where the commissioners of the county bid more than the taxes and costs, and the owner was thereby deprived of his security for the surplus. So also the sale was supported in Frick *v.* Sterrett, 4 W. & S. 269, where the treasurer by mistake took the bond for less than the true surplus. To these cases may be added Bayard *v.* Inglis and Burd *v.* Patterson, *supra*, where no bonds were given when the sale was made and deed delivered. In the former the bond was not given until nearly two years afterward, and it was never filed.

It was argued that the limitation in the Act of 1804 does not apply to a case where the owner is in possession. That is true, as was determined in Bigler *v.* Karns, 4 W. & S. 137, and Shearer *v.* Woodburn, 10 Barr 511. But that is where the possession is *actual*, and the owner is thus daily and hourly challenging the validity of the tax title. It is not so, however, in any other case, and it is settled that in all other cases the limitation runs from the time of the sale, and not from the time when possession is taken by the purchaser. Parish *v.* Stevens, 3 S. & R. 298, the first case decided under the Act of 1804, on this point, was overruled by Waln *v.* Shearman, 8 S. & R. 357, on the ground that an ejectment would not lie against a vacant possession.

But the Act of 29th March 1824 having provided a remedy for the owner in the case of a vacant possession, this court returned to the doctrine of Parish *v.* Stevens, and it is now held that the limitation runs from the time of the sale, and not of possession: Robb *v.* Bowen, 9 Barr 71; Sheik *v.* McElroy, 8 Harris 25; Burd *v.* Patterson, *supra;* Stewart *v.* Trevor, 6 P. F. Smith 385. In the last case Justice Strong, summing up the cases, says: "Since the Act of 29th March 1824 the limitation is perfect at the end of five years from the delivery of the deed to the purchaser without regard to possession." In the present case not only was there no possession in the owner, but the purchaser, at the tax sale, took possession by pasturing his cattle on the land, taking off timber, and paying the taxes, while the owner remained inactive, and admitted himself to be out of possession by bringing the ejectment against the purchaser.

In the argument, Donnel *v.* Bellas, three times reported (10 Barr 341, 1 Jones 341, 10 Casey 159), was relied on. But that case is wholly inapplicable. There the treasurer's deed was never delivered, the purchaser gave only a note for his bid, the money was never accounted for by the treasurer, and within five years from the sale the owner of the tract paid the taxes and costs, and lifted the undelivered deed from the treasurer. The purchaser·

[Rogers *v.* Johnson.]

had not a shadow of title, and the limitation in the Act of 1804 had nothing to operate upon. So the case of Trego *v.* Huzzard, also reported three times (7 Harris 441, 10 Harris 368, 11 Casey 9), has no resemblance to this. There the tax title was defeated by a redemption, and the claimant of it, who bought it from the purchaser at treasurer's sale, was the agent of the owners in making the purchase. His claim was in bad faith, and the limitation was inapplicable. Hoffman *v.* Bell, 11 P. F. Smith 444, opinion by Sharswood, J., is not parallel. The purchaser had no deed, and no title to be helped out by limitation. In this case the law is clearly with the plaintiff in error. He had a title, invalid it is true, but such an one as the limitation of five years clearly should protect.

Judgment reversed, and a *venire de novo* awarded.

Thompson, C. J., dissented.