## Trexler, Appellant, *v.* Africa.

*Taxation—Tax sales—Unseated land—Assignment—Payment.*

It is essential to the validity of a tax sale of unseated land that a tax was assessed by the proper authorities, was due for one whole year, and remained unpaid at the time of the sale. If several taxes were assessed, it is sufficient that the assessment of any one was legally made, and that the tax was in arrears for one whole year. To complete the purchaser's title, when his bid exceeds the taxes and costs, he must give bond for payment of the surplus.

No laches can be imputed to an owner who, in paying the taxes, or in redeeming after a sale, pays the amount which upon his inquiry the treasurer demands. Such payment is equivalent, in legal effect, to the actual payment of all that is due, and this is not affected by a misapplication

by the treasurer of the money paid, or by his failure to credit it properly. The owner may prove the fact of payment, although the treasurer is dead, and although the books show no credit for the payment.

While actual payment by any person will discharge the lien of the taxes, and thus end the treasurer's power to sell for nonpayment, an offer to pay, which fails through the fault of the treasurer, in order to have the effect, must be made by a person having an interest which would be lost to him by a sale. Such an interest may be shown by a contract of sale of the land executed to the payment of the taxes.

It is no more the duty of the purchaser than of the owner to ascertain, independently of the proper officials, the actual amount of the taxes and costs. Each may rightly accept the statement of those given by the treasurer, without an investigation or computation to test the accuracy.

Where a statement made to a purchaser shows no surplus his title is not lost by failure to enter a bond for a surplus.

The mere fact that a purchaser paid the amount of the tax by a draft will not defeat the title, where the deed acknowledges the payment of the bid, and there is no evidence that the amount was not received by the treasurer.

Argued Oct. 26, 1904. Appeal, No. 108, Oct. T., 1904, by plaintiff, from judgment of C. P. Huntingdon Co., Sept. T., 1903, No. 33, on verdict for defendants in case of J. F. Trexler and John L. Trexler v. J. M. Africa and John Edelblute. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Trespass for removing sand from land alleged to be owned by plaintiff. Before WOODS, P. J.

The facts appear by the opinion of the Superior Court.

The court gave binding instructions for defendants.

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were in giving binding instructions, and various rulings on evidence referred to in the opinion of the Superior Court.

*H. H. Waite*, with him *Chas. C. Brewster*, for appellant.— Where an owner of unseated land makes an honest effort to pay his taxes, and is prevented from doing so by the negligence of the county treasurer, the sale of his land is absolutely void: Dietrick v. Mason, 57 Pa. 40; Knupp v. Brooks, 200 Pa. 494; Breisch v. Coxe, 81 Pa. 336.

The treasurer has no right to accept the purchaser's note

for the amount of taxes and costs. It must be paid in cash: Donnel v. Bellas, 34 Pa. 157; Nutting v. Lynn, 18 Pa. Superior Ct. 59.

If the purchaser pays more than the amount of taxes due on the lands and costs, he must give the treasurer a bond for such excess. The giving of this bond is indispensable to the acquisition of a valid title. The payment, to the treasurer, of the whole amount of the purchase money is not an adequate equivalent: Woodland Oil Company v. Shoup, 107 Pa. 293.

The assessment of taxes is mandatory, and its observance is a condition precedent to the right of the commissioners, to the sale of land so returned for the unpaid taxes : Vandermark v. Phillips, 116 Pa. 199.

*Thomas F. Bailey*, with him *W. H.* and *Jas. S. Woods*, for appellee, cited : Gibson v. Robbins, 9 Watts, 156.

OPINION BY SMITH, J., March 14, 1905 :

It is essential to the validity of a tax sale of unseated land that a tax was assessed by the proper authorities, was due for one whole year, and remained unpaid at the time of sale. If several taxes were assessed, it is sufficient that the assessment of any one was legally made, and that this tax was in arrear for one whole year. To complete the purchaser's title, when his bid exceeds the taxes and costs, he must give bond for payment of the surplus.

In the present case there appears no question that the taxes for which the land was sold were regularly assessed more than a year prior to the sale ; the assessments having been made in 1895 and 1896, and the sale on June 13, 1898. The appellants, however, allege that these taxes were in fact paid before the sale. To sustain this allegation, they offered to prove that John L. Trexler, one of the plaintiffs, on June 2, 1898, went to the treasurer's office and requested of the treasurer a statement of the taxes due on the John Patton tract, in Walker township (the land in controversy), and on the Wm. Smith tract, in Porter township ; that on receiving such statement he paid to the treasurer the whole sum demanded, by a check to the treasurer's order ; and that this check, with the treasurer's receipt, had been destroyed through the burning of the wit-

ness's house. The treasurer's books, however, show a credit on the Wm. Smith tract alone, by check of John L. Trexler, June 2, 1898; and on June 13 the Patton tract was sold to the defendants for the taxes thus appearing unpaid. The plaintiffs acquired the legal title to the land by deeds executed in September, 1899, and August, 1900. To show that in June 2, 1898, they had an interest in the land which they had a right to protect by payment of the taxes, in connection with the contention that they then did all that the law requires of an owner by paying the amount demanded by the treasurer, they offered a contract with the grantors for the purchase of the land, executed October 18, 1897. The offer to prove payment was objected to on the ground that it was immaterial, irrelevant and incompetent; that the official records showing nonpayment could not be contradicted by parol; and that the plaintiff was incompetent to testify to the alleged payment because the treasurer was dead at the time of the trial. The offer of the contract was objected to on the ground that the equitable interest arising from it was merged in the legal title conveyed by deed, and that it was offered in rebuttal, while it was part of the plaintiffs' case in chief.

In sustaining these objections there was error. No laches can be imputed to an owner who, in paying his taxes, or in redeeming after a sale, pays the amount which, upon his inquiry, the treasurer demands: Lumber Co. v. Wells, 157 Pa. 5; Breisch v. Coxe, 81 Pa. 336; Dietrick v. Mason, 57 Pa. 40. Such payment is equivalent, in legal effect, to the actual payment of all that is due; and this is not affected by a misapplication by the treasurer of the money paid, or by his failure to credit it properly: Knupp v. Brooks, 200 Pa. 494; Brown v. Day, 78 Pa. 129; Montgomery v. Meredith, 17 Pa. 42. The plaintiffs had a right to show that they had done all that the law requires of an owner, to avoid the sale of his land, by paying all the taxes demanded by the treasurer; and the witness whose testimony was offered for this purpose was entirely competent to testify on this point. The treasurer had no interest in the thing in action; and his death has no more effect than the death of any agent has on the competency of the parties dealing with him. Nor are the books of the treasurer and the commissioners such records as import absolute verity. While

treated as prima facie evidence, they may be contradicted by parol: Knupp v. Brooks, 200 Pa. 494. The contract was important as fixing the status of the plaintiffs in relation to the land at the time of the alleged payment of taxes. While actual payment by any person would discharge the lien of the taxes, and thus end the treasurer's power to sell for nonpayment, an offer to pay, which fails through the fault of the treasurer, in order to have this effect must be made by a person having an interest which would be lost to him by a sale. The contract was not an essential link in the plaintiffs' claim of title, and they had a right to rest on their legal title until evidence was offered to impeach it. But such evidence having been given, the contract became important for the purpose of showing an interest in the plaintiffs, antedating the legal title, which required payment of the taxes for its protection, and would be protected by the payment of all taxes demanded by the treasurer.

The evidence offered by the plaintiffs respecting communications with other persons than the treasurer in relation to the payment of taxes, with that relating to payment of taxes on the Smith tract, and on the Patton tract subsequent to the sale, and the tender to the defendants of the amount paid by them for the land, was wholly immaterial, and was properly rejected. The evidence, also, on the part of the defendants, of payment of taxes for 1897 and 1898, was immaterial; but since it could not have prejudiced the plaintiffs its admission is not ground for reversal.

The evidence relating to the assessment of the taxes for which the land was sold, with the returns of the collectors of the township and school taxes remaining unpaid, were properly admitted. The objections to evidence of the treasurer's sale, and his deed, are without foundation. It is no more the duty of the purchaser than of the owner to ascertain, independently of the proper officials, the actual amount of the taxes and costs. Each may rightly accept the statement of these given by the treasurer, without an investigation or computation to test its accuracy. Here the statement made to the purchaser showed no surplus, and the purchaser was not required to look farther. A miscalculation by the treasurer would not affect the title : Rogers v. Johnson, 67 Pa. 43 ; Gibson v. Robbins, 9 Watts, 156. The objection that the purchase money was paid by draft

comes with ill grace from a party who alleges his own payment of taxes in the same manner. The deed acknowledges payment of the bid, and there is no evidence that the amount was not received by the treasurer. In Donnel v. Bellas, 10 Pa. 341, and 34 Pa. 157, the purchaser paid part of the bid and gave his note for the residue. It does not appear when the note was payable; but it was not paid, nor were the deeds delivered until nearly five years after the treasurer went out of office. In Nutting v. Lynn, 18 Pa. Superior Ct. 59, there was neither payment of money or a note, but an arrangement was made between the owner's agent and the treasurer for the future delivery of lumber to the latter in payment. Clearly, neither a note, looking to future payment, nor an agreement for the future delivery of a commodity, can be regarded as payment. A check or draft, however, stands on different ground. It is presently payable; it is presumably drawn on a fund applicable to its payment; and in the prevailing business usage of the day it has come to be accepted as cash. On the principles laid down in Burns v. Smith, 180 Pa. 606, the checks or drafts given in this case, in the absence of proof that they were not duly honored, must be deemed payment by the plaintiffs of their taxes, and by the defendants of their bid.

Nothing in the assignments of error requires further consideration.

Judgment reversed and venire de novo awarded.