# M'Call *against* Yople.

Lands embraced within the donation districts and appropriated to the officers and soldiers of the Revolution, although within the Triangle and located prior to the acquisition of it by the State of Pennsylvania, were not the subject of appropriation by warrant and survey.

ERROR to the District Court of *Erie* county.

This was an action of ejectment by Sarah M'Call and others against Christian Yople, Nathaniel Bruce, John Dimond, David Yople, John Brown, Frederick Warren, and Hiram Bruce.

The single point decided requires no further statement of the facts of the case than that contained in the preceding cases and the opinion of the Court. The cause was argued by the same counsel.

The opinion of the Court was delivered by

HUSTON, J.—The title of the plaintiffs was admitted to be the same as in the last two cases—warrant to Samuel Byard of the 13th of April 1792—survey 429 acres, 24th of June 1794, and patent the 27th of July 1799—deduced to plaintiffs. The defendants showed the general draft of donation district No. 10. The officers and soldiers had no warrant—the law directed the whole 10th district to be surveyed, and a number to be inserted in each tract; and when an officer or soldier drew a number in a district, his name was inserted in the draft of that number and a patent granted to him, and an office copy of the draft was evidence of his title. It was proved that the plaintiffs' title covered parts of

[M'Call v. Yople.]

Nos. 191, 192 and 193, but not the whole of either of them. Christian Yople and Nathaniel Bruce lived on 191 — David Yople and John Dimond, as tenants of Akerly's heirs, who were made co-defendants, lived on 192—and John Brown and Frederick, Warren on 193. No. 191 was drawn and never relinquished. No. 192 was drawn by James Neal, Sergeant, who never relinquished. No. 193 was drawn by Thomas Chilcott, Sergeant. The old State line ran nearly through the middle of this tract—Chilcott appeared to have applied under the law of 1791 for another tract; but he did not give up his old patent, and of course did not obtain a new one for another tract.

There are several of the Acts of Assembly which show an anxiety to have the rights of the soldiers and officers ascertained, and all matters relating to these titles settled; and there were various changes on this subject. It is the only part of the legislation respecting these lands in which there is any sign of variation. More than one of these Acts directed certain matters to be performed by the officers of the land-office, and to make a record of what was done; and we had before us no extracts of these proceedings—a name one day, two names at another time, and some apparent inconsistency. In short, satisfactory proof that extracts of detached parts of a record ought not to be received: in this case nothing was elucidated by them. But there is not in the whole legislation any variation from the main plan of appropriating at least all that was surveyed and returned as donation tracts to the sole and exclusive use of the officers and soldiers of the revolutionary army; or at least so much of the land surveyed as should suffice to give to each the quantity which had been promised. There is another matter apparent from first to last, that all which had been surveyed and returned was prohibited from appropriation by the ordinary warrants and surveys from the land-office. The drawn lots are kept sacred to the last; and when after waiting and prolonging the time for soldiers to come and claim from 1787 till October 1813, the undrawn lots were offered to such as should settle and cultivate them; yet this was not allowed on the usual terms or to the usual extent—the price was at first $1.50 an acre, then reduced to 50 cents. The settler, instead of 400 acres, could only obtain one lot, which were generally 200 acres, and this only by a residence of ten years, &c.

All the lands within the boundaries set apart for officers and soldiers, were not included in the surveys made and returned: I say nothing of such parts not so surveyed and returned, nor of the parts *struck* and never put in the wheel. The matter is not before us; but the lands surveyed and returned as donation lots, never could be taken by common warrants and surveys or common settlement and claim of 400 acres at the usual price west of the Ohio and Conewango. This makes it unnecessary to go into the ques-

iv. — 22                    p

[M'Call v. Yople.]

tions raised in this last case about satisfied taxes, and interference of surveys.   I will just observe that if the position of plaintiffs' counsel is correct, the plaintiffs' tract could never have been sold for taxes, for it interferes with three donation tracts; and so neither of the donation tracts could have been sold, for the plaintiffs' survey cut through the middle of each of them, leaving a quantity not covered by it on the west end, and a larger quantity on the east end; and thus these four tracts would all be exempt from taxation, or what comes to the same thing, payment could not be enforced.   In fact there are many other tracts on the drafts before us in the same situation, so that on this doctrine no taxes could be collected on a large space of country.

But there is no law nor decision that you cannot sell a tract of land if it interferes with another tract, but a decision directly to the contrary; 1 *Watts* 503.   To be sure, if the tract interfered with is seated, and taxed as seated, the purchaser at treasurer's sale will not recover that part; but he will recover the residue of the tract he bought.   The plaintiffs' counsel seemed to think the payment of taxes gave them a title; but this court had decided payment of taxes will not give title to another man's property, and the correctness of this decision will strike every mind.   Neglecting to pay taxes for a person's own land, may be one evidence that he has abandoned it—but it does not follow that paying taxes for what a man had no right to, will operate to give him a deed for it: money paid for taxes in this way, is thrown away.

There was but one argument in this and the two preceding cases of *M'Call* v. *Coover*, and *same* v. *Himebaugh*, on the main questions; and the opinion on the first of those cases is applicable to and equally decisive of the whole three.

Judgment reversed, and a *venire de novo* awarded.