# Bayard *against* Inglis.

The Act of 1815 on the subject of the sale of unseated lands, does not repeal the 3d section of the Act of 1804: so that a purchaser at treasurer's sale who enters into the actual possession of the land and continues it for five years, making improvements, cannot be disturbed by the former owner or any one claiming under him.

Two tracts of unseated land having been assessed in the name of the same owner, but for different amounts of tax, the one upon which the greater amount was assessed, was sold by the treasurer for the lesser amount, and the surplus bond regulated accordingly: *Held* that this was an irregularity which did not vitiate the purchaser's title.

The fact, that the purchaser of unseated land did not give a bond for the surplus at the time of the sale and execution of the deed to him, does not vitiate the title, if it appear that the bond was executed and delivered to the treasurer during the two years while the title remained inchoate and subject to redemption: nor does it affect the title that the bond was not filed in the prothonotary's office.

In an ejectment for unseated land sold by the treasurer for taxes, where the defendant claims to recover for improvements, the jury cannot take into the account the mesne profits of the land, unless they be claimed in the plaintiff's declaration: and this is the proper practice in all such cases.

ERROR to the Common Pleas of *Dauphin* county.

Sophia Inglis and others, the widow and heirs at law of George Cooper, deceased, against Franklin Wright and Henry M. Bayard. This was an action of ejectment, in which both parties claimed under George Cooper, in whom the original title was. The plaintiffs having given this title in evidence, the defendants relied upon the evidence of an assessment and sale of the land in the name of George Cooper for taxes, made to Samuel Shoch, Esq., who sold to Alexander Cardon, from whom they purchased.

The plaintiffs' objections to this title arose out of these facts:—
There were two tracts of land assessed in the name of George Cooper, one for taxes amounting to $2.34, and the other amounting to $15.52. In transferring them from the assessment books to the sale book of the treasurer, the amounts were transposed, so that the land in dispute, which had been assessed with $15.52, was

sold for the taxes of $2.34; the amount bid was $6, and the surplus, after adding $2.87 of costs, was 79 cents, for which the purchaser gave his bond.  It also appeared, that the sale was made on the 16th June 1824, the deed executed and acknowledged 23d August 1824, the surplus bond was dated the 25th May 1826, and was produced in court by the treasurer, never having been filed in the prothonotary's office.  And the treasurer testified, that he never filed the bonds he took, and as to this one, he asked Mr Shoch, the purchaser, whether he should file it, and he replied, that it was not worth while.  On the 4th May 1829, Samuel Shoch, Esq., conveyed to Alexander Cardon, who in 1833 went into actual possession of the land and made valuable improvements upon it to the value of $1020.  It was sold as his property by the sheriff to the present defendants.

The positions then taken by the defendants were: 1. That by virtue of the 3d section of the Act of 1804, the actual possession of the land by the purchaser under the treasurer's deed for five years, gave him an indefeasible title.  2. That if the plaintiffs were entitled to recover, the defendants should be allowed for the value of their improvements.

To this the plaintiffs replied: 1. That the Act of 1804 was repealed by the Act of 1815, and therefore, the limitation contained in the 3d section could not avail the defendants.  2. That the sale by the treasurer was void, because it was not sold for a tax actually assessed upon the land:—because a surplus bond was not given at the time the treasurer's title was made:— and, because, at the instance and request of the purchaser, it was never filed, as the law requires.  3. That although the defendants may be entitled to an allowance for the value of their improvements, yet the plaintiffs were entitled to credit for the mesne profits of the land while in the defendants' possession.

The court below instructed the jury, that the treasurer's sale of the land in dispute for the payment of a tax which had not been assessed upon it, but upon another, was fatal to the defendants' title; and that they were not protected by the limitation contained in the 3d section of the Act of 1804.  That if the title were otherwise good, it would not be affected by the time at which it was given, nor by the fact that it was not filed: that the defendants were entitled to an allowance for the value of their improvements without regard to the mesne profits of the land, which must be the subject of consideration in another action between the parties. The jury found a verdict for the plaintiffs, and fixed the value of the improvements at $1020.  The plaintiffs and defendants each excepted to this opinion, and each sued out a writ of error.

*M'Cormick* and *Foster*, for defendants below, argued, that the transposition of the amounts of the taxes was but an accidental irregularity occasioned by the negligence of the clerk: that the

original assessment was perfect, and that the plaintiffs could not in the face of the curative Act of 1815, avail themselves of this irregularity, when the sale was occasioned by their default in not paying their dues to the county; and that the limitation contained in the 3d section of the Act of 1804, was a perfect protection after the lapse of five years; and on this point cited 3 *Watts & Serg.* 510; 4 *Watts & Serg.* 167, 218.

*M'Clure*, for plaintiffs below, argued, that it was essential to the validity of a treasurer's title, that the land should have been sold for a tax previously assessed upon the land, either regularly or irregularly; but here it is conceded, that this land was sold for a tax which had been assessed upon an entirely different tract of land. The land was sold for $6, when the taxes actually due amounted to $15.52; and thus, the owner is deprived of his land, and the tax actually due upon it remains unpaid. The treasurer had no right to sell the land for a sum less than the actual amount of taxes and costs due upon it. Nor were the defendants entitled to an allowance for improvements. 2 *Watts & Serg.* 107, 240; 4 *Watts & Serg.* 36; 6 *Watts* 435.

The opinion of the Court was delivered by

ROGERS, J.—The Act of 1815, on the subject of the sale of unseated lands for payment of taxes, does not repeal the Act of 1804, but only so much as is altered or supplied. It is held, therefore, that the limitation of five years, contained in the 3d section of the Act of 1804, is in full force. *Ash* v. *Ashton*, (3 *Watts & Serg.* 510); *M'Call* v. *Himebaugh*, (4 *Watts & Serg.* 168). And this is conclusive in a main point against the plaintiffs in this ejectment. The defendants claim under Samuel Shoch, who purchased the property at a sale for taxes the 16th of June 1824, and a deed therefor by the treasurer the 23d of August 1824, duly acknowledged. After the purchase from Shoch, the defendants went into possession, made valuable improvements on the property, and have been in the undisturbed possession upwards of five years. This, then, under the construction given to the Acts of 1804 and 1815, in the cases cited, validates the defendants' title, so that it cannot be disturbed by the former owner or any person claiming under him. Several objections are taken to the treasurer's sale, which amount to an irregularity merely, and consequently come within the curative provisions of the Act of 1815. George Cooper was the owner of two tracts of land, one of which was assessed at the rate of $2.34, the other at $15.52. By a mistake of the county officers, the tract now in dispute, which was assessed for the larger sum, was sold for the payment of the small tax. This is certainly irregular, but it will not avoid the sale altogether. The land was duly assessed, and the effect of the sale for the wrong tax will be, as is just, that the county, whose officers have made the mistake,

[Bayard v. Inglis.]

will lose the tax. There is no good reason why the purchaser should suffer for their negligence, nor is there any injury done to the owner, who is in default by neglecting to pay the taxes for which the land was assessed. We see no error in the charge, in relation to the surplus bond. The bond given by the purchaser for the surplus was not executed until the 25th of May 1826. The sale took place on the 16th of June 1824, but the sale was inchoate for two years according to the Act, and within that time, the purchaser gave the treasurer the bond. And this was sufficient; for although the treasurer says, that he never put the bond in the prothonotary's office, that he asked Samuel Shoch, the purchaser, about it, who said it was not worth while to do it, this will not vitiate the sale. No injury appears to have been done to the owner in delaying to give the bond, or afterwards, by neglecting to file it. We think the title of a purchaser ought not to be defeated, except for more substantial reasons.

The question, whether, in estimating the value of the improvements, you can take into view the mesne profits, is one of very little practical importance, as the plaintiff may, if he chooses, by giving the proper notice, recover the mesne profits in the ejectment, and whether they are considered in connection with the value of the improvements or separately, and so found, matters but little. The latter would, undoubtedly, be the correct practice, as it would remove all doubt in future, whether the jury had passed on the question of mesne profits. When no notice is given of an intention to claim the mesne profits in the ejectment, I am inclined to believe, that they cannot be taken into the account in that action. It is to be observed, that the plaintiffs and defendants have each taken a writ of error. The reversal of the judgment in the writ of error taken by the defendants, disposes of the whole case.

Judgment reversed.