## Chadwick *et al.* *versus* Phelps *et al.*

*Ejectment.*— *Unperformed against to recover land sold at tax sales.*— *Validity of as against prior purchasers.*— *Who are* bonâ fide *purchasers of land without notice of adverse claim.*—*Right to redeem from tax sale lost by transfer of owner's interest.*—*Act of April 3d 1804, § 3, construed.*

1. Where one agreed with the heirs of a decedent to recover unseated lands belonging to the estate, credit the proceeds upon a bill held by him against them, accounting after payment for one-half the receipts, and, having done nothing towards recovering the lands, subsequently bought out the interest of all the heirs in one tract, and received a deed therefor: *Held*, in an action of ejectment by prior purchasers at tax sales, that the agreement was irrelevant and inadmissible on the part of defendants who claimed as vendee of the heirs, for the purpose of showing a trust in him, from which their right to redeem the land from the tax sales under which the plaintiffs claimed might be inferred.

2. If the defendants claiming under the vendee of the heirs had paid no part of the purchase-money until after the plaintiffs had brought ejectment, they could not claim to be innocent purchasers without notice, but must rely on the right of the heirs to redeem from the tax sales under which the plaintiffs held title.

3. Where all the interest of the heirs, legal and equitable, had been conveyed, *held*, that neither of them could thereafter redeem from a previous tax

[*Chadwick et al. v.* Phelps *et al.*]

sale, and, therefore, a redemption, by one of the heirs in his own name, of one undivided fourth part of the land, within two years of his minority, made, more than ten months after he had sold his interest, with the other heirs, is of no avail, either in his own favour or that of claimants under him and his co-heirs.

4. The limitation of the 3d section of the Act of 3d April 1804, that no action for the recovery of lands sold for taxes should lie unless brought within five years from the sale, applies to the original owner, and has no operation against a subsequent tax title.

ERROR to the Common Pleas of *McKean county*.

This was an action of ejectment by Hiram Phelps, Henry P. Hart, and John Fiske against John R. Chadwick, Seneca Freeman, Merrick Housler, and Joseph Housler, for eleven hundred acres of land in Shippen township.

The plaintiffs claimed the land in controversy under two separate tax sales and conveyances, by the treasurer of McKean county, in 1849 and 1850.

The defendants claimed under N. Richmond, who had purchased the land at a treasurer's sale September 30th 1844, and paid therefor by giving his own note to the treasurer. Richmond died October 13th 1846, leaving four minor children, whose interest in the premises became vested in Chadwick and one Brewster Freeman by a conveyance from two of the children, E. F. and W. H. Richmond, after they came of age, and by a sale of the interest of the other two, under and by virtue of an order of the Orphans' Court, and a conveyance by their guardian, dated March 5th 1859.

On the 28th of February 1860, Brewster Freeman conveyed the whole tract to John R. Chadwick, the consideration having been paid in equal shares by Chadwick and Seneca Freeman.

On the trial, the defendants offered in evidence a contract dated April 15th 1857, between the heirs of Nelson Richmond and Brewster Freeman, recorded in Miscellaneous Book, p. 297, recorder's office, McKean county, for the purpose of showing the right of the heirs to redeem.

The part of the contract pertinent to the offer is as follows :—

Memorandum of agreement made the 15th April 1857, between William H. Richmond and O. R. Bennett, guardian of Edwin F., Franklin O., and Emma I. Richmond, minor heirs of Nelson Richmond, deceased, and Amanda M. Freeman, administratrix of the estate of said Richmond, parties of the first part, and B. Freeman, party of the second part, witnesseth as follows, viz. : The said parties of the first part, for the consideration hereinafter mentioned, promise and agree to, and by these presents do permit the party of the second part to sue for any or all of the unseated lands that were at the time of the death of said Nelson Richmond, deceased, the property of the said Richmond by virtue of treasurer's deeds or otherwise, whether the said

[Chadwick *et al. v.* Phelps *et al.*]

lands were sold by parol agreement in the lifetime of the said
Richmond, or have since been conveyed by the said Amanda M.
Richmond, or otherwise, and the said parties of the first part
agree to permit Brewster Freeman to use their name or names as
plaintiffs to a suit, if deemed necessary, for the recovery of said
lands, or any part thereof, or purchase the same at a sale by the
Orphans' Court when sold, and to exercise his own judgment and
discretion in relation to suing for said land, and they also au-
thorize said Freeman to compromise and settle any claim which
they may have in any part or portion of said lands, and the said
parties of the first part further agree that the said Freeman may
receive whatever money he can get from John Holmes, after the
judgment which said Holmes obtained against the said estate in
the Common Pleas of McKean county shall be paid, arising from
the Moody farm, and credit the same on his account for board,
lodging, and clothing, furnished by him to the minor heirs of
said Nelson Richmond, in consideration whereof the said Brew-
ster Freeman agrees to apply whatever money he may be able to
get of John Holmes as aforesaid to the said account for board,
&c., and for the balance of his claim for board, &c., amounting
in all to about $1300, to look exclusively to what may be made
out of the said lands for payment, and to release the said parties
of the first part from all claim he may have upon them, or either
of them, growing out of the boarding and clothing of the said
minors, or any of them, unless he shall be able to collect the said
amount out of said lands. And the said B. Freeman agrees fur-
ther to proceed by suit or otherwise to collect what he can out
of said lands, to keep and save harmless the said parties of the
first part from all costs or expense in any way incurred in the
recovery of said lands, and to pay the heirs of said Richmond
estate one-half of what money may be made out of the said lands
over and above all expenses incurred on recovering the same over
and above the balance of his claim for board, &c., which is to be
first deducted.

Plaintiffs' counsel objected to the admission of the contract in
evidence, on the ground that it was irrelevant. The court sus-
tained the objection, and rejected the offer.

Several points were presented by the counsel for the plaintiffs
and the defendants, among which were the following on the part
of the defendants:—

1. That the title to the land in suit, acquired by Nelson Rich-
mond by his purchase at treasurer's sale, September 30th 1844,
is not affected by the fact that a note was given for the purchase-
money, taken in connection with all the facts proved in relation
to said note.

2. The defendants, John R. Chadwick and Seneca Freeman,
having purchased said land from Brewster Freeman, and paid a

[Chadwick *et al. v.* Phelps *et al.*]

valuable consideration for the same, are not affected by the arrangement between Nelson Richmond and the county treasurer and county commissioners, by which the note of said Richmond was given to the county for the amount of his bid.

3. When unseated land is duly assessed with taxes, and sold by the county treasurer, and the deed duly acknowledged and delivered to the purchaser, a vendee from said purchaser for a valuable consideration, without notice, is not affected by an arrangement between the treasurer and purchaser at treasurer's sale, by which a note is received in the place of money.

4. That the portion of the land in suit that belonged to each of the minor children of Nelson Richmond, deceased, can be redeemed by defendants from the sale made by Treasurer Bard and Treasurer Darling, within two years from the time that each of said minors is of the age of twenty-one years.

5. The legal right existed to make the redemption, as it was done.

6. No action can be sustained by plaintiffs, not having been brought within five years after the sale for taxes to Nelson Richmond, deceased.

All of which were answered in the negative.

The charge of the court below (WHITE, P. J.) was as follows:—

After stating the main facts of the case, his honour proceeded: —" Many propositions have been submitted by counsel of the respective parties on which the opinion of the court is requested. Some of these involve questions of law and fact, others questions of law only.

" The questions regarded as most important involve, first, the validity of the treasurer's sale and conveyance to Judge Richmond. Second, the effect of the redemption made by J. R. Chadwick on the 17th December 1859, and the right of the heirs at law of Nelson Richmond to redeem.

" The arrangement under which sale was made to Judge Richmond is shown by evidence of Mr. Oviatt, and by the note of Judge Richmond, which was read to the jury as follows:—

" ' $737.05. By the 30th day of September 1846, for value received, I promise to pay to the county of McKean seven hundred and thirty-seven dollars and five cents, it being for lands purchased at treasurer's sale this 30th day of September, A. D. 1844. Now, it is understood, and I hereby promise to pay over to apply on this obligation the amount of tax and costs on any lot of the lands purchased as aforesaid, that may be redeemed before the said 30th September 1846, at the time the said redemption-money may be received.

" ' Smethport, January 7th 1845.'

"Endorsed on back of note: ' Received, August 17th 1846, on the within, two hundred and fifteen dollars seventy-five cents.

[Chadwick *et al. v.* Phelps *et al.*]

(Signed) B. C. CORWIN, Treasurer: Received, January 14th 1847, two hundred and fifty-six dollars and forty-five cents on the within. . (Signed) B. C. CORWIN. Received, May 25th 1847, two hundred and seventy-nine dollars and ninety-one cents. (Signed) B. C. CORWIN.'

" Mr. Oviatt swears that he was clerk of the county commissioners in 1844, that an arrangement was made on the week of the September Term of the court of that year, between the commissioners and treasurer of the county and Nelson Richmond, by the terms of ,which the treasurer was authorized to sell the lands remaining unsold on a credit of two years to Richmond and others, that the lands purchased by Richmond, in September 1844, including the tract in controversy, were purchased under that arrangement, and that he was present, and saw Richmond give the note for the amount of his bids. The state, road, and school tax on the lands purchased under this arrangement were to be paid by the treasurer out of county funds, and the note of Richmond was to be received and credited as county funds to the treasurer. On the settlement of his account the treasurer was charged with the whole amount of taxes for 1842 and 1843 on these lands, and was credited by Judge Richmond's note for $737.05.

[" The commissioners and treasurer of the county had no legal authority to make such an arrangement, and the sale in pursuance of it was illegal and void.]

[" But on the part of the defendant it is said, that no suit having been brought by the owner, or by any one claiming under him, within five years to recover this tract, the defect in the sale to Richmond is cured by the limitation in the 3d section of the Act of the 3d April 1804. Should this position be correct (and the court are of opinion that it is, and so instruct the jury), it is applicable only to the title which plaintiffs hold under Crary, and not to their title derived from tax sale made in 1848 and 1850, which is subsequently acquired and paramount to the Crary title, and could not be affected by the Statute of Limitations in the Act of 1804.]

" The treasurer's receipt for redemption-money, which is relied on by defendants to defeat the tax sales of 1848 and 1850, bears date on the 19th day of December 1859, and purports to be a receipt for the one-fourth of the redemption-money and taxes on lands mentioned therein, including among other taxes, No. 5979. It is drawn to Edwin F. Richmond, and sets forth that the redemption is made to him as a minor heir. The evidence shows that the money paid was furnished by two of the defendants in this suit (Messrs. Chadwick & Freeman), and that at the time it was paid to the treasurer Edwin F. Richmond had no title to or interest in the land; that on the 4th of March 1859, after he

had attained his majority, he and his elder brother, William H.
Richmond, had conveyed their title in it to Brewster Freeman,
and that the residue of the Richmond title (being the interest of
Franklin O. and Emma I. Richmond) had, on the 5th of March
1859, been conveyed by their guardian to said Brewster Free-
man.

"The whole interest, therefore, of the heirs at law of Nelson
Richmond in their lands had been divested prior to the 19th De-
cember 1859.  They were not owners, and had no title or interest
which authorized them to redeem.

"But the redemption was not made by Edwin F. Richmond,
although so expressed in the receipt.  It was made by J. R.
Chadwick, for and on behalf of himself and Seneca Freeman,
under an agreement between them and Brewster, who was the
owner of the Richmond title, and was present at the time, and
authorized them to redeem.  It is not alleged by the defendants
that the payment made to the treasurer on the 19th December
1859, as shown by the receipt, redeemed any other interest than
that of Edwin F. Richmond.  It is conceded that the undivided
fourth to which William Henry Richmond was entitled was not
redeemed, and that the equity of redemption thereto having been
permitted to expire without payment of the redemption-money,
the plaintiffs have title to, and should recover, this undivided
fourth.  But it is alleged that no recovery can be had of the
interest which belonged to Edwin F. Richmond, that having been
redeemed, nor of the interest which belonged to Franklin O. and
Emma I. Richmond, they being still minors, and having still the
right to redeem their interest separately at any time within two
years after attaining the ages of twenty-one years.  It is a con-
clusive answer to this position that the evidence shows that Ed-
win F. Richmond had divested himself of all title or ownership
in the land before the alleged redemption had been made, and
that Franklin O. Richmond and Emma I. Richmond have no in-
terest or ownership which authorizes them to redeem, their
interest having been vested in Brewster Freeman by sale in the
Orphans' Court, and conveyed by their guardian.

"It is said, too, by defendants' counsel that the conveyance to
John R. Chadwick of the title which had previously belonged to
these minor children of Judge Richmond, carried with it the
privilege which the law gave them to redeem, and that this may
be exercised by him at any time during which it would have been
competent for them to exercise it.  We do not concur in this
position.  We regard this privilege as a personal one, and con-
ferred by the Act of Assembly upon the minor alone, and for
his benefit.  The alleged redemption of the 19th December 1859,
was void, because, at the time it was made, Brewster Freeman
was the owner of the interest which was proposed to be redeemed,
and had no right to appropriate to himself a personal privilege

---

[Chadwick *et al. v.* Phelps *et al.*]

conferred on E. F. Richmond alone, a privilege which cannot be transferred by deed, assignment, or otherwise.

"It was void, too, because at the time it was made Brewster Freeman was the owner of the whole title and interest of the heirs of Judge Richmond, as shown by the deeds given in evidence, and could not redeem the part without redeeming the whole. Prior to the passage of the Act of 9th March 1847, one joint tenant, or tenant in common, could not redeem his individual interest in a tract of land. Being a joint owner, he must redeem the whole tract, and the redemption thus made would enure to the benefit of his co-tenant as well as to his own. The 3d section of the Act of the 9th March 1847, authorizes joint tenants, tenants in common, as copartners of unseated lands sold for taxes to redeem their interests, but it does not authorize them to redeem less than their entire interests. There is no Act of Assembly, or adjudication of the Supreme Court, which authorizes an owner of a tract of unseated land, whether he is sole owner or the owner of an individual part, to redeem less than his entire interest in the tract. [The redemption, therefore, relied upon by defendants to defeat plaintiffs' tax title, acquired through treasurer's sale in 1848 and 1850, is regarded by the court as a nullity,] and those sales being regular, and the title under them vested in plaintiffs, the jury are directed to render a verdict in favour of plaintiffs for the whole tract."

Under these instructions there was a verdict and judgment in favour of the plaintiffs; whereupon the defendants sued out this writ, and assigned for error,

1. The refusal of the court to admit as evidence the contract of April 15th 1857, above.

2. The whole charge, specifying as particularly erroneous the portions printed above in brackets.

3. The refusal to affirm the points of defendants.

*L. D. Wetmore,* for plaintiffs in error.

*R. Brown* and *R. D. Hamlin,* for defendants.

The opinion of the court was delivered, May 6th 1863, by

THOMPSON, J.—Supposing the Richmond title valid, notwithstanding the circumstances of its origin, and, for my own part, I am of opinion it was, and that the facts disclosed did not bring it within the rule of the cases of Donnell *v.* Bellas, reported in 10 Barr, and in 1 Jones, at the same page 341 of each book, and again in this court in 10 Casey 160, does it avail the plaintiffs in error anything? Treating it for the present as valid, was the agreement between the heirs, partly by guardian and partly in person, with Brewster Freeman, of the 15th April 1857, improperly rejected by the court?

[Chadwick *et al. v.* Phelps *et al.*]

The object in offering it appears to have been to establish a trust in Brewster Freeman of the lands for the heirs, and their equitable right to redeem. A careful study of the agreement, however, discloses no such trust. It appears to be the meaning of the agreement, that if Freeman recovered land belonging to the estate of Richmond, he was not to hold it for the heirs *in solido*, but to credit them with the balance of a boarding bill of $1300, which contingently might be reduced by a collection from another source named, and after that, to account to them for half the money he might realize from the sale of the land. He did nothing towards the recovery of lands under this agreement, that we discover, but purchased out the interest of the Richmond estate in them, as the agreement contemplated might be done by him, at an Orphans' Court sale in 1859, and received the guardians' deed therefor, dated the 5th of March 1859. He had received from the two heirs who were of age, a conveyance of their interest the day before. After this, and on the 28th of February 1860, Freeman conveyed the land in controversy to Chadwick, under whom the defendants below claimed, but it is alleged that he paid no part of the purchase-money until after the present ejectment was brought to June Term 1860. As none of the evidence has been brought up, and it would have been more satisfactory had it been, we take the uncontradicted statement as true, that the purchase-money was paid as stated. This perhaps took away the defendants' equity as innocent purchasers without notice, and forced them to lean upon the right of the heirs to redeem the tax sales of 1848 and 1850, under which the plaintiff claimed. What was this right?

After the Orphans' Court sale, and the conveyances already noticed, no title, legal or equitable, remained in the heirs. No trust for any portion of the land for their benefit existing in Freeman, as already stated, and the legal title being gone, they could not redeem. It appears that on the 19th of December 1859, I suppose within two years after his majority, for the evidence is not given nor the fact stated, Edwin F. Richmond paid the redemption-money of one undivided fourth of the tract to the treasurer. But as he had conveyed his title away on the 4th of March previously, he had no right to redeem, and this abortive attempt in his own name could not avail any one else, for he did not act for any other. This, therefore, went for nothing. As the purchasers of the Richmond title did not attempt to redeem, we need not discuss the question of how far a purchaser of a minor's estate is invested with his right to redeem. No redemption was attempted on that ground. We think, therefore, under these circumstances, there was no error committed in the rejection of the agreement of the 15th April 1857.

Another ground taken by the defendant below was, that the

[Chadwick *et al. v.* Phelps *et al.*]

Statute of Limitations of five years, contained in the Act of
1804, was a bar to a recovery by the plaintiffs. But this view
is erroneous. That limitation has no operation against a sub-
sequent tax title. To give it such an effect, would be to render
invulnerable such a title against after-sales for taxes. This we
all know is not the case. Its operation is only applicable to the
holder of the prior title : 5 W. & S. 465 ; 9 Barr 71. The Crary
title is in the hands of the plaintiffs, and was not relied on as
the foundation of a recovery by the plaintiffs below, so far as we
can discover. We see nothing to correct in this record, and

The judgment is affirmed.