# Nutting *v.* Lynn, Appellant.

*Taxation—Payment of taxes—Commodities.*

A tax collector has no right to receive anything in payment of taxes, except legal tender money, and the lien of the taxes will not be discharged, except by such payment or tender.

An agreement made by an agent of a landowner to deliver to the county treasurer certain commodities in the future in lieu of an immediate payment of taxes, assessed on the land, is not a valid payment of taxes, although the commodities are subsequently delivered, and a receipt is given as for a cash payment.    In such a case the owner of the land is bound by the knowledge of his agent that the taxes are in fact not paid, and if the land is sold for taxes without his knowledge, and he does not redeem it within the time provided by law, he is without remedy.

Argued May 22, 1901.    Appeal, No. 57, April T., 1901, by defendant, from judgment of C. P. Warren Co., Sept. T., 1899, No. 51, on verdict for plaintiffs, in case of W. P. Nutting and George F. Yates v. Charles A. Lynn.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for taking timber.    Before LINDSEY, P. J.

At the trial it appeared that the subject in controversy was title to lot No. 217 in Deerfield township.    The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Now, gentlemen of the jury, this being the case, the question arises whether these taxes for 1895, on lot 217, had been paid. We say to you as a matter of law that in our judgment the arrangement that was made and testified to by Mr. Myers does not constitute a payment of the taxes. It is the duty of the owner of land to pay his taxes to the proper officer and to pay them in money, and if he chooses to make the officer his agent for the payment of the taxes and the taxes are not paid and the land is sold, it is his fault; that the taxes can only be paid by a payment in money. It is true that the owner who attempts to pay his taxes, and to pay them in money, cannot be deprived of the title to his land by a mistake made by the officer, in the application of the money which he has paid to him, in any way. But in this instance, where no money is paid to the officer, where the owner or the agent of the owner of the land chooses to make an arrangement to turn out lumber to the officer, he has not performed his duty, and if the taxes are not actually paid it is the fault of the agent and the owner of the land.] [6]

Now, gentlemen of the jury, taking the evidence of the plaintiffs in this case and the evidence of Mr. McGrew, did Mr. McGrew undertake to pay the taxes on this land in money? He says he went there to make an arrangement to pay the taxes, and he says this land, namely, tract No. 217, was included in the arrangement.

[Now, if Mr. McGrew had gone there and asked for a statement of the lands upon which taxes were due, and if No. 217 had been left out, and he had gone there for the purpose of paying them in cash, then it might be claimed that a mistake was made by the treasurer; but he says he went there to make an arrangement for the payment of the taxes, and that No. 217 was included in this arrangement, and by the arrangement lumber was turned out and no money was paid or offered to be paid. Therefore we see no question in dispute to submit to you. Upon the undisputed evidence in the case, the agent of the owner of the land, Wilson McGrew, did not attempt to pay the taxes in money at this time; and that lot No. 217 was included in the arrangement which he made would not be a payment, and therefore it does not defeat the treasurer's sale

which was made on June 8, 1896, to the plaintiffs in this case.] [7]

Verdict and judgment for plaintiff for $120. Defendant appealed.

*Errors assigned* among others were (6, 7) above instructions, quoting them.

*D. I. Ball* and *W. W. Wilbur*, of *Wilbur & Schnur*, for appellant.—The owner of land may rely on the statement received from the officer, and he will not suffer from the negligence of the officer in giving the statement: Laird v. Hiester, 24 Pa. 464 ; Dietrick v. Mason, 57 Pa. 43; Philadelphia v. Anderson, 142 Pa. 368; Bubb v. Tompkins, 47 Pa. 359; Price v. Mott, 52 Pa. 316.

It is believed there is no case which holds that a taxpayer will lose his land because of his payment of the taxes thereon, either by note or commodity, especially where the receiver of taxes accounts for such. taxes to the proper municipality entitled thereto. Certainly he could not lose his land where the officer has led the taxpayer to believe his taxes are paid, and then sells his land without notice to him : Chadwick v. Phelps, 45 Pa. 105.

*W. E. Rice*, with him *W. D. Hinckley*, for appellee.—No arrangement can be made between the collector and taxpayer whereby he is discharged from liability by anything except absolute payment: Reutchler v. Hucke, 3 Ill. App. 144; Conway v. Cable, 37 Ill. 83 ; Ambler v. Clayton, 23 Iowa, 173 ; Kahl v. Love, 37 N. J. L. 5 ; Loftin v. Watson, 32 Ark. 414 ; Staley v, Columbus Twp., 36 Mich. 38 ; Richards v. Stogsdell, 21 Ind. 74; Ankeny v. Albright, 20 Pa. 157 ; McLanahan v. City of Syracuse, 18 Hun 259 ; McWilliams v. Phillips, 51 Miss. 196.

OPINION BY ORLADY, J., July 25, 1901.

The Great National Petroleum Company owned a number of tracts of unseated land in Warren county which were upon the treasurer's sales list for June, 1896. Wilson McGrew, as the agent of the landowner, went to the county treasurer's office before the sale, and made an arrangement

with him "to pay all the taxes that were assessed against the Great National Petroleum Company, thirty-one tracts in all,"—the tract in dispute being included in the list. McGrew had with him a statement or memorandum of the tracts of land upon which he wished to pay the taxes, and he read, by designated names and numbers, the lots from that list, going over with the county treasurer the sales book in his office. Although the taxes aggregated $1,268.10, McGrew paid no money to the county treasurer for the taxes then due. In lieu of which payment, an arrangement was made, which consisted of an agreement between McGrew and M. A. Myers (the county treasurer) that McGrew would furnish to Myers some lumber, which was then being manufactured, when it would be dry enough to ship. This was delivered about one year afterwards, and amounted in value to $1,566.99. On a settlement of the lumber transaction between McGrew and Myers the latter paid to McGrew the difference due to him of $298.89.

The county treasurer gave to McGrew a receipt bearing date June 1, 1896, but which was not delivered until some time in the fall of 1896 or winter of 1897, which omitted in its scheduled statement the taxes against the lot in dispute (No. 217) for the year 1895 but which concluded, in a printed form as follows: "in full for taxes for the years 1894 and 1895." The lot No. 217 was sold by the county treasurer to the plaintiff on June 8, 1896, for the taxes of 1895 and the costs that had accrued thereon, but McGrew did not learn of this sale until October 6, 1898, which was after the time for the redemption of the land by the owner had expired.

The sole question raised by the appellant is the validity of the payment of the taxes through the medium of a commodity. The court below held that because the taxes had not been paid in fact but through the arrangement mentioned, the payment was not valid, and that the omission, if erroneous, was due to the fault of the landowner or his agent. The landowner was not misled by the county treasurer in the amount of the taxes claimed or as to the payment of the taxes against this particular tract. The office books were inspected by him and the amount of the taxes was not in dispute. The departure from the plain mandate of the statute

was suggested by the agent of the landowner. The taxes were then due, but the law contemplated a money payment not trade barterings. The Act of April 30, 1879, P. L. 34, under which the appellant claims the receipted statements to have been delivered, purposes that the payment shall be fully consummated when the treasurer shall enter such payments on the proper book kept by him for the purpose, and, if requested by the person paying such taxes, he shall give a certified copy, under his official seal, of the entries in such book, specifying the name of the person or persons as whose property such lands are taxed, etc., the kind and amount of taxes assessed thereon and so paid, the date of payment of the same, the name of the person or persons paying the said taxes, and for whose use the same are paid. For the service thus performed the treasurer is entitled to receive the sum of twenty-five cents. The appellant cannot consistently claim to have been misled by the receipted statement which his special agent knew to be untrue in fact. He knew that the county treasurer had not received $156.25 in full for the taxes mentioned from McGrew Bros., or from any other person on June 1, 1896. He did know or was conclusively bound to know, that the arrangement between his agent and a public official was against public policy and contrary to law. Moreover, the receipted statements were not delivered to McGrew until after this tract had been sold. Not having paid the taxes, he was charged with notice of the tax sale and was bound to redeem the land within the statutory time in order to preserve his title.

A tax collector has no right to receive anything in payment of taxes except legal tender money, and the lien of the taxes will not be discharged except by such payment or tender. Neither is he empowered to accept the promissory notes of individuals, and is still less authorized to accept the verbal promise of the taxpayer in payment. Hence no arrangement can lawfully be made between the collector and the property owner whereby the owner of the property can be discharged from liability by merely marking the taxes paid on the books: Black on Tax Titles (2d ed.), sec. 160, and cases cited; McLanahan v. City of Syracuse, 18 Hun, 259; McWilliams v. Phillips, 51 Miss. 196; Kahl v. Love, 37 N. J. L. 5; 25 Am. & Eng. Ency. of Law, 283; Heft

v. Gephart, 65 Pa. 510. The intention of the legislature is plainly and clearly expressed, and the reason is the same as requires the treasurer to receive the money from a purchaser at a tax sale before he delivers his deed for the land sold in order to prevent management and fraudulent perversion of the law: Donnel v. Bellas, 10 Pa. 341; s. c., 34 Pa. 157.

In this case there was not a bona fide attempt on the part of McGrew to pay the taxes. He substituted his private arrangement for the payment in money as required by law. He knew what he should pay, and it was then his duty to pay, and his failure to perform that duty was the source of the trouble. Nor did he offer to redeem the land so sold in the manner provided by the statute. By the act of March 13, 1815, the original owner of unseated land may avoid a sale for nonpayment of taxes by proof of payment of the taxes " previously to the sale " or of an offer of the redemption money within two years afterwards. " In no other case, and on no other plea, shall an action be sustained " for the purpose: Ankeny v. Albright, 20 Pa. 157. The taxes against lot 217 were not marked as paid on the books of the treasurer, and the receipt, irregular as it was, did not specify the taxes of 1895 as paid. This receipt was attacked as being a mere device and untrue in fact. Neither McGrew nor the owner attempted to redeem the land, not for the reason that anything was omitted from the receipted statements, but because, from their standpoint, the taxes had been paid through McGrew's dealings with Myers.

The judgment is affirmed.