Walter H. Douglass, Jr., and Dallas Douglass, his wife, Appellants, *v.* Grace Building Co., Inc., Appellee.

Submitted on briefs, October 6, 1975, to President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Ward F. Clark*, for appellants.

*Alfred O. Breinig, Jr.*, for appellee.

OPINION BY JUDGE CRUMLISH, JR., December 4, 1975:

The sole issue for our determination in this appeal, as stipulated below, is whether tender to the county treasurer of an uncertified personal check in payment for delinquent taxes constitutes *payment* under the relevant redemption statute, Section 15 of the Act of May 29, 1931, P.L. 280, *as amended*, 72 P.S. §5971 (Act) which states:

"§5971o. Redemption money

"If any owner, his heirs or legal representatives, or any lien creditor, his heirs, assigns or legal representatives, or other person interested, shall, within two years after the day such sale was made, redeem such real estate for the benefit of the owner, by *payment* of the taxes and interest for which the lands were sold, and the costs, with an additional sum of fifteen per centum, and any taxes which may have been levied against any such property since the treasurer's sale,

and which remain unpaid by the owner or redeemer, to the county treasurer, he shall receive and receipt for the same, and pay said taxes, interest, costs and additional percentage over to the purchaser upon demand, and the accrued taxes to the district entitled thereto; and the county treasurer shall forthwith acknowledge the receipt of the redemption moneys upon the margin of the acknowledgement of the treasurer's deed, as the same is entered and recorded in the prothonotary's office as aforesaid, and, if said deed has been recorded in the office for recording of deeds, cause an entry to be made on the margin of the record of the deed in the office of the recorder of deeds, by marking thereon the word 'redeemed', which shall be signed by the county treasurer, and attested by the recorder of deeds, and thereafter said deed shall be void and of no effect. If such deed be not recorded, then such owner or person interested, as aforesaid, shall be entitled to have the treasurer's deed delivered to such owner, creditor, heir, assign, legal representative, or persons interested, for cancellation. The county treasurer shall certify all such redemptions to the boards of county commissioners, who shall enter the same on the Tax Return Docket, and who shall certify such redemptions to the county assessors, so that the property may thereafter be assessed in the name of the owner." (Emphasis supplied.)

Underlying this action to quiet title brought by Plaintiff-Appellants Walter H. Douglass, Jr. and Dallas Douglass, his wife, against Grace Building Company, Appellee and purchaser of the disputed tract at a tax sale, are the following facts:

In 1965, Plaintiffs bought a residence in Bucks County and thereafter paid the realty taxes through the mortgagee. However, Plaintiffs apparently failed to comply

with an agreement entered into at settlement whereby they became obligated to pay an interim school tax for the year 1966 in the amount of $191.10. On November 1, 1967, the county treasurer sent a notice to Plaintiffs of the amount due which included the following clause in bold type:

"PAYMENT ACCEPTED ONLY BY CASH, MONEY ORDER, OR CERTIFIED CHECK."

Subsequent delinquency notices containing this instruction were sent on February 1, 1968 and April 1, 1968 and were received by Plaintiffs. A fourth notice, similar to the previous ones, was sent on June 3, 1968, but it also included notice to Plaintiffs that a tax sale was to be scheduled for August 5, 1968, unless payment was made. No payment having been tendered by that date, the property was sold to Defendants. On June 1, 1970, Plaintiffs received a final delinquency notice informing them of their right of redemption and stating that a "certified check or money order" should be made payable to the treasurer in the amount of $251.26.

Within the allowable period for redemption, Plaintiffs tendered to the treasurer a *personal uncertified check* in the requested amount. The treasurer then returned the check which return occurred some seven days prior to the close of the redemption period. Four days after the close of the period for redemption, a certified check was received for the full amount due.

Our research has revealed no case in Pennsylvania law where the issue of mode of payment in a redemption following a treasurer's tax sale has been judicially scrutinized. However, there is case law, extending back over one hundred years, which holds that a treasurer, unless he agrees to the contrary, may receive money only in *payment by a purchaser at a tax sale, Donnel v. Bellas,* 34 Pa. 157 (1859), and that payment by check is ineffective. Similarly, in *Nutting v. Lynn,* 18 Pa. Superior Ct.

59 (1901), payment was tendered to a treasurer to *prevent a tax sale* and there the court reaffirmed the rationale that payment in other than legal tender to the tax collector was no payment at all.

Cases are reported in other areas of the law as well, which shed light on the current dilemma. It has been held that in an appeal from an arbitration, for purposes of perfecting that appeal, the costs are not paid when a check is tendered but rather are payable in cash, or become paid only when the tendered check is finally paid by the drawee bank, or indeed collected. *Rice v. Constein,* 89 Pa. 477 (1879) ; *Carr v. McGovern,* 66 Pa. 457 (1870) ; *Ellison v. Buckley,* 42 Pa. 281 (1862).

The rationale which pervades these cases is that where a party nears the end of a limitation period, be it time for appeal, time to purchase, or as in the instant case, time to redeem, courts are reluctant to sanction what amounts to a mere promise to pay, *Ellison v. Buckley, supra,* because finality of payment to the public officer insures collection without unnecessary litigation, *Walker v. Graham,* 74 Pa. 35 (1873) and in many instances, the public officer is but a conduit standing in the shoes of third parties whose rights are easily prejudiced and whose rights must be scrupulously guarded, *Donnel v. Bellas, supra.*

With these principles in mind, we cannot and will not sanction conditional tender in the form of a personal uncertified check to the county treasurer whose duty it was to insure a *valid* redemption prior to voiding the treasurer's deed which he had already executed and delivered to Defendant. It was eminently reasonable and perfectly valid for the treasurer to insist upon unconditional tender in the form of cash, money order or certified check. Plaintiffs were given ample notice of the tax deficiency, and the method by which it might be cleared, both prior to, and after the tax sale. Accordingly, we hold that pay-

ment by personal uncertified check is not payment within the meaning of Section 15 of this Act.

Affirmed.

––––––

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The majority opinion is unquestionably sound when measured by another era's realities where receiving actual payment for a personal check was an involved and time-consuming undertaking. Thus, it is not surprising that the six cases cited in the majority opinion span the time period of 1859 to 1901 and five of the cases were decided before 1880.

Today's banking practices, combined with twentieth-century transportation facilities and techniques, result in checks being presented for payment to the bank upon which they are drawn within 24 to 48 hours after being deposited in any other bank. If the two banks involved are within the same community or county, actual payment of the check will likely be accomplished the same day the check is deposited in the drawee's bank. Therefore, we ought to take judicial notice of the present-day reality of check clearing procedures, since even unsophisticated users of banks are fully cognizant that there is *now* scant time to deposit funds in a bank account to cover a check issued without adequate funds in the account upon which it was drawn.

The law has always been reluctant to permit valuable property to be taken from owners for a failure to pay taxes, the amount of which constitutes a minimal fraction of the property value. Accordingly, we have redemption statutes, and the one here provides for "payment" of the taxes, together with interest, costs, and a fifteen per centum penalty. The undisputed facts in this case disclose that the appellants, within the allowable period for redemption, tendered a personal uncertified check to the treasurer in the exact amount necessary to effectuate

the redemption. The treasurer returned the check to the appellants "some seven days prior to the close of the redemption period."[1]

Admittedly, a personal check is simply a promise to pay. However, the mere query as to what would have happened in this instance if the treasurer had, seven days before the close of the redemption period, deposited appellants' check, provides the certain and crucial answer: The treasurer would have received payment, all that is required by the redemption statute, prior to the close of the redemption period.

I do not advocate that the presentation of a personal check to the treasurer at any time prior to the close of the redemption period accomplishes payment. However, I would contend that, when a personal check is deposited in the normal course of the treasurer's duties *and* is paid by the drawer's bank prior to the close of the redemption period, then, under such facts, payment has been made as the statute requires.

Such a rule would protect all interested parties and avoid certain harsh results. If the Legislature desires to limit redemption to cash, money order, or certified check, it can do so in lieu of the present statutory requirement of "payment" of redemption money. Although the appellants' neglect here, relative to their tax obligations and property interests, nearly destroys one's sympathy for their plight, it remains clear to me that timely payment of redemption money would have been made in this case if the treasurer had deposited appellants' personal check rather than rejected it and returned it to appellants. Accordingly, I would reverse.

JUDGE KRAMER joins in this dissent.

---

1. It is not disputed here that there were sufficient funds in appellants' bank account on which the personal check was drawn to insure payment by the drawers' bank.